The STATE of Ohio, Appellee,

v.

CARPENTER, Appellant.

[Cite as *State v. Carpenter* (1996), 116 Ohio App.3d 615.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15403.

Decided Dec. 13, 1996.

*Steven J. Ring,* Assistant Prosecuting Attorney, for appellee.

*Gary W. Crim,* for appellant.

FREDERICK N. YOUNG, Judge.

I

Teresa Renee Carpenter appeals her conviction on one count of felonious assault in violation of R.C. 2903.11(A)(1).

On October 18, 1994, Matthew Conley, a six-week-old child, was treated for respiratory distress at Children's Medical Center in Dayton, Ohio. The child's mother, Carpenter, was arrested, tried, and convicted for knowingly causing serious harm to Matthew. The state asserted that Carpenter covered her infant son's mouth and nose with her hand for several minutes with the knowledge that she was likely to cause serious harm to him. Carpenter replied that she covered Matthew's mouth and nose for a shorter period of time in order to keep him quiet until an unwanted visitor at the door left, and that she did not expect to hurt Matthew by doing so.

At trial, the state called two witnesses for its case-in-chief. The first, Dr. Ralph Hicks, an expert witness on child abuse, testified that hospital records revealed that Carpenter brought Matthew to the emergency room ostensibly to receive treatment for a rash, and that the medical personnel discovered that he was in respiratory distress. He also testified that, in his opinion, Matthew's respiratory distress was "life threatening." Finally, Dr. Hicks testified that, after reviewing Matthew's condition and consulting with Detective William A. Lawson, he believed that Matthew had been "subjected to attempted suffocation" by a hand or object placed over his airway for an extended period of time.

The state's other witness, Det. Lawson, had interviewed Carpenter about a week after Matthew was admitted to the hospital. Det. Lawson testified that during the interview, Carpenter broke down into tears and stated, "I don't know what came over me. I lost my mind. I just cracked." Lawson testified that he then took Carpenter to the police station, read her *Miranda* rights to her, and continued the interview. According to Det. Lawson, Carpenter admitted to

having covered Matthew's mouth and nose in order to stop him from crying. Lawson read the following exchanges from the statement that was prepared from the interview:

"Q. [Lawson]: How long did you have your hand over his mouth and nose?

"A. [Carpenter]: One to two minutes at most.

"Q. Did you realize at the time that your son could not breathe with your hand over his mouth and nose?

"A. I guess, yes.

"Q. Did you think by keeping him from breathing he would die or could die?

"A. Yes. I guess that is the reason I took my hand off."

Det. Lawson testified that Carpenter reviewed the statement and voluntarily signed her name to it.

The defense called only one witness, Carpenter herself. Carpenter testified that on the day of Matthew's injury, she had been caring for her twins, Matthew and Sierra. Matthew had been crying all day long. Carpenter testified that she had just successfully put Sierra down to sleep when a Children Services counselor, but not her regular case worker, came to her front door. Carpenter testified that she had been arguing with the twins' father earlier and trying to take care of the twins all day, and did not wish to speak to the counselor. She testified:

"I looked out, well, because every time she would come over she would stay for at least an hour, usually more, and at the time I just couldn't, didn't want to talk to her at all, because she was wanting to talk to me about Eddie [Matthew's father] and I arguing and I didn't want to talk about it no more. I had enough of him that day, and in order for her not to hear me, I had my hand, put my hand over him like this, (indicating) and went up the stairs with him so that she hopefully wouldn't hear him crying so that she wouldn't know that I was there."

Carpenter further testified that she did not intend to harm Matthew and that she covered his face for only about twenty seconds. She explained that she told Det. Lawson that she had put her hand over Matthew's airway for "one or two minutes" because she was tired during the questioning and had not thought about the time frame carefully enough at that point to give a more accurate answer.

The state called two rebuttal witnesses. The first, Jane Walker, an intake worker at Montgomery County Children's Services who was assigned to Carpenter at the time of the incident, testified that no counselor was assigned to go to Carpenter's home on October 18, 1994. Finally, the state called Donna Nickoson–Reichert, a nurse at Children's Medical Center, who testified that Carpenter brought the child in to be treated for a rash, and the medical personnel discovered the respiratory distress.

Carpenter was convicted after a jury trial and was sentenced to four to fifteen years in the Ohio Reformatory for Women. She brings this timely appeal and sets forth the following five assignments of error:

### First Assignment of Error:

"The trial court erred in overruling the motion for directed verdict under Rule 29 and in sentencing her because the government did not prove that the defendant knowingly caused the serious physical harm."

### Second Assignment of Error:

"The trial court erred in permitting Dr. Hicks—not the admitting or treating physician—to testify about the reason for Matthew Ryan Conley's admission into the hospital on October 18, 1994."

### Third Assignment of Error:

"The L [*sic*] court erred in permitting Jane Walker to answer the following question: 'And have you consulted with others in her [Theresa René Carpenter] case to make a determination as to whether or not anyone else on your staff could have possibly made such a request?' "

### Fourth Assignment of Error:

"The trial court erred in permitting the government attorney to violate the defendant's right to a fair trial by substituting emotion for reasoned advocacy, denigrating the defendant, misstating the evidence on what the defendant testified to, and arguing information outside of the record in his closing argument."

### Fifth Assignment of Error:

"The trial court erred in permitting the conviction based upon the counsel's conduct falling below the standard by failing to object to the improper argument of the government."

## II

### A

Because we find Carpenter's claims pertaining to the performance of the prosecuting and defense attorneys during summation to be dispositive, we address directly only her fourth and fifth assignments of error. We discuss issues raised by the other assignments of error only to the extent that they are relevant to the fourth and fifth assignments. In her fourth assignment of error, Carpenter asserts that her right to a fair trial was unconstitutionally compromised by the prosecutor's histrionics and general impropriety during his closing

statement. In her fifth assignment, Carpenter contends that because her defense counsel failed to object to the prosecutor's improper remarks during summation, she was denied effective assistance of counsel in contravention of her rights under the Sixth and Fourteenth Amendments to the United States Constitution.

Although we consider these two assignments of error together, we note that Carpenter's fifth assignment of error essentially defeats her fourth. Because defense counsel did not lodge contemporaneous objections to any of the allegedly improper remarks, the alleged errors were not properly preserved for appeal and are, accordingly, waived. See *State v. DeNicola* (1955), 163 Ohio St. 140, 56 O.O. 185, 126 N.E.2d 62, paragraph three of the syllabus; *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 662 N.E.2d 311. Our review of the fourth assignment of error is thus discretionary and limited to plain error only. Crim.R. 52(B). We recognize plain error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Landrum* (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, 717, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. In order to prevail on a claim governed by the plain error standard, Carpenter must demonstrate that the outcome of her trial would clearly have been different but for the errors that she alleges. See *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043, 1046. Thus, the alleged prosecutorial misconduct constitutes plain error only if it is clear that Carpenter would not have been convicted in the absence of the improper comments. See *State v. Slagle* (1992), 65 Ohio St.3d 597, 606, 605 N.E.2d 916, 926; *State v. Johnson* (1989), 46 Ohio St.3d 96, 102, 545 N.E.2d 636, 642. The plain error standard generally presents, in accordance with its design, an almost insurmountable obstacle to reversal in cases such as this.

However, we need not (and probably could not) find that the outcome of Carpenter's trial clearly would have been different were it not for improper comments, because Carpenter asserts an independent basis for reversal, with a less daunting standard of review. A defendant's claim that she was denied effective assistance of counsel dispenses with the requirement that an objection be lodged in order to preserve an error for appeal. Often, as here, defense counsel's failure to object is itself the appealable error. The performance of trial counsel will be determined to constitute ineffective assistance of counsel only where appellant demonstrates that the representation failed to meet an objective standard of reasonable representation and resulted in prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Prejudice is demonstrated by a showing of a reasonable probability that, but for trial counsel's unreasonably unprofessional performance, the result of the pro-

ceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *Id.* This standard of prejudice, which is far more solicitous of the defendant's rights than the plain error standard, guides our review of the proceedings below.

Nevertheless, Carpenter's direct allegations of prosecutorial misconduct in her fourth assignment of error are germane to our discussion because they provide the grounds upon which defense counsel allegedly should have objected, and provide the necessary context for us to decide whether defense counsel's performance was reasonable and to determine the extent of any resulting prejudice to Carpenter.

 The standard for prosecutorial misconduct in closing argument is whether the statements were improper and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 300; *State v. Mundy* (1994), 99 Ohio App.3d 275, 300, 650 N.E.2d 502, 517. The prosecution is, however, entitled to significant latitude in its closing remarks. *State v. Maurer* (1984), 15 Ohio St.3d 239, 267, 15 OBR 379, 403, 473 N.E.2d 768, 793. Generally, the state may comment freely on " 'what the evidence has shown and what reasonable inferences may be drawn therefrom.' " *State v. Lott, supra,* 51 Ohio St.3d at 165, 555 N.E.2d at 300, quoting *State v. Stephens* (1970), 24 Ohio St.2d 76, 82, 53 O.O.2d 182, 185, 263 N.E.2d 773, 777. However, prosecutors may not invade the realm of the jury by, for example, stating their personal beliefs regarding guilt and credibility, or alluding to matters outside of the record. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885.

In order to assess the validity of Carpenter's claim that she was denied effective assistance of counsel in contravention of her constitutional rights, we must first determine whether the prosecution's remarks were indeed improper. Second, assuming that they were improper, we must address whether defense counsel's failure to object was objectively unreasonable. Finally, if the remarks were improper and the failure to object was unreasonable, we must consider whether the resulting prejudice is such that "it undermines the confidence in the outcome" of the trial. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. We now turn to the relevant remarks by the prosecutor.

B

 Carpenter specifically challenges the prosecutor's remarks during rebuttal. While Carpenter points to two particularly objectionable remarks, our review of the transcript convinces us that other remarks also tend to support her

general claim that the prosecution indulged in improper argument. Moreover, when reviewing a prosecutor's remarks during summation, we are required to review the closing argument in its entirety. See *State v. Moritz* (1980), 63 Ohio St.2d 150, 157, 17 O.O.3d 92, 97, 407 N.E.2d 1268, 1273. To that end we have reproduced a large portion of the state's rebuttal, as follows:

"We have been fairly nice during the course of this trial. Civil. That is the way it should be. There comes a point in a case such as this when you get right down to the nitty-gritty, down to the dirt, and the fact of the matter is this case makes me sick. She is a child abuser. Let's don't beat around the bush. That is what she is. She assaulted Matthew Ryan Conley on October 18, 1994. Now defense would have you put every emotion, every sympathy, every compassion aside, and you know what, he is right. I don't want you to decide this case on that. Indeed it's the law. You cannot decide the law on that basis, but we do want you to use your common sense and your life's experiences and not lose sight of the fact that we're not dealing with a twenty-two inch eight pound sac [*sic*] of flour here. This is a real live person, a human being, about twenty-two inches tall, eight or nine pounds dripping wet, and he is totally defenseless.

"All Matthew Conley wanted on October 18 was a little love, maybe a little affection, a little care and attention. Instead for crying too much his mother snaps and he gets smothered, suffocated, choked, whatever word you want to use, by her own hand. Teresa Carpenter lied on the stand. There was no Children Services worker knocking at her door. Jane Walker told you that. Jane Walker is, I submit to you, a concerned Children Services worker, diligently pursues her work and came in here and was honest with you and I as she could possibly be. * * *

"The defendant lied to you on the stand. * * * I submit she is a liar. Detective Lawson has no motive to lie. He told you the truth. Likewise does Dr. Hicks. He's done twenty-five hundred, three thousand of these cases. He is the expert in child abuse. He said suffocation is consistent with what he saw. Take it at face value to decide the case. She is the liar, not Detective Lawson and Dr. Hicks."

The prosecutor next asserted that Carpenter knew that her actions were likely to cause serious harm to the child, and stated:

"By her own admission she did it anyway. That is a crime, Ladies and Gentlemen of the Jury, to cut off the air, whether it's in total or in part, to a six week old child. That constitutes knowingly causing serious harm. She knew that her conduct could or would probably cause serious physical harm. That is why there is all these warnings on plastic sacks, the dry cleaning bags, and in cribs that have plastic. Everybody knows you have to be real careful not to

suffocate a baby, an infant. She knows that too. But she did if [*sic*] anyway. She knew it was wrong when she did it she told me that."

Finally, the prosecutor told the jury the following:

"By your decision you tell Ms. Carpenter either hey, it's okay, resume your parenting, resume your motherhood, didn't do anything wrong, or you say, ma'am, it's time you took responsibility for your actions and paid the consequences for what you did."

Carpenter states that the state's remarks improperly denigrated the defendant, misstated evidence, argued evidence that was not a part of the record, and substituted emotion for reasoned advocacy. Carpenter's claim that the state argued facts outside of the evidence refers to the prosecutor's remarks pertaining to warnings on dry cleaning bags and other plastic products. Even if such remarks may be considered the argument of facts outside of the evidence, we believe that they were *de minimis*. However, to the extent that the prosecutor's other remarks tended to express a belief in the guilt of the accused, vouch for the credibility of the state's witnesses, unfairly attack the credibility of the defendant, and misconstrue the defendant's testimony, they were improper.

The prosecutor in the case *sub judice* clearly commented on the defendant's credibility by repeatedly calling her a "liar." Likewise, he vouched for the credibility of the state's witnesses by stating that Jane Walker "was honest with you and I as she could possibly be," that Detective Lawson "told you the truth," and that Dr. Hicks was also truthful. It is not improper for the prosecution to comment fairly on the credibility of witnesses based on their in-court testimony. *Mundy*, 99 Ohio App.3d at 304, 650 N.E.2d at 520–521; see, also, *State v. Hill* (1996), 75 Ohio St.3d 195, 204, 661 N.E.2d 1068, 1078; *State v. McCray* (1995), 103 Ohio App.3d 109, 120–121, 658 N.E.2d 1076, 1083. However, while a prosecutor is free to argue that certain evidence tends to make a witness more or less credible, *State v. Watson* (1991), 61 Ohio St.3d 1, 10, 572 N.E.2d 97, 106; *State v. Tompkins* (Oct. 25, 1996), Clark Co.App. No. 95–CA–0099, unreported, 1996 WL 612855, he may not state his own belief as to whether a witness is telling the truth. See *State v. Smith, supra*, 14 Ohio St.3d at 14, 14 OBR at 318, 470 N.E.2d at 885; *State v. Draughn* (1992), 76 Ohio App.3d 664, 670, 602 N.E.2d 790, 793. Here, the prosecutor went beyond merely arguing reasonable inferences from the facts, and asserted as fact that the defendant was a liar and that the state's witnesses were honest. The prosecutor's references to the credibility of Walker, Lawson, and Hicks were blatant vouching with virtually no support other than the prosecutor's authoritative voice. The repeated references to the defendant as a "liar" were especially irresponsible. We hold that these remarks were improper.

While these references to the credibility of the defendant and the state's witnesses were improper, the prosecutor's characterization of Carpenter's testimony pertaining to whether she knew that Matthew would be seriously harmed by having his mouth and nose covered was simply false. The state "must avoid insinuations and assertions which are calculated to mislead the jury." *State v. Smith, supra,* 14 Ohio St.3d at 14, 14 OBR at 318, 470 N.E.2d at 885. By telling the jury that Carpenter admitted that she covered Matthew's nose and mouth with the knowledge that it would seriously harm him, the prosecutor misrepresented Carpenter's testimony on the critical issue in the case. The relevant testimony from the prosecution's cross-examination of Carpenter was as follows:

"Q. And you knew when you did it that it was wrong to do that, didn't you?

"A. Not actually when I done it. I knew afterwards when I thought about it, especially seeing what happened to him when I brought him to the hospital that it was wrong, yes."

This is the only exchange on this issue on record between the prosecutor and Carpenter, and it does not support the prosecutor's remark that "[s]he knew it was wrong when she did it she told me that." In fact, Carpenter clearly intended to testify that she did not know at the time that she covered his face that her actions would hurt Matthew. Whether Carpenter's answer was credible was strictly for the jury to decide, and the prosecutor interfered with that function by misleading the jury as to the content of the testimony. Because the prosecutor's remark grossly misrepresented testimony on an essential element of the crime, we find that it was wholly improper.

Finally, Carpenter argues that the prosecutor's remarks during rebuttal were improperly emotional, in violation of her due process rights. Several such comments had the potential to mislead the jury and certainly tended to appeal to passion rather than deliberative reason. Nonetheless, we decline to hold that the state's remarks were so "deliberately saturate[d]" with emotion that, standing alone, they were necessarily improper. See *State v. Keenan* (1993), 66 Ohio St.3d 402, 409, 613 N.E.2d 203, 209. However, we believe that the prosecutor's statement to the jury that a failure to convict was the equivalent of telling Carpenter "resume your parenting, resume your motherhood, didn't do anything wrong" was improper. That statement improperly suggested that failing to find proof of felonious assault beyond a reasonable doubt was the equivalent of exonerating Carpenter of all wrongdoing, and prodded the jury to convict not on the evidence, but on the jurors' assessment of her mothering skills. The prosecutor also improperly implied that an acquittal on felonious assault would automatically preclude any other action by the state against Carpenter or on Matthew's behalf. See *State v. Awkal* (1996), 76 Ohio St.3d 324, 335, 667 N.E.2d 960, 970–971 (holding that prosecutor's statement that defendant would "walk out

that door" if jury found him not guilty by reason of insanity was improper because it was incorrect and "plainly sought to inflame the passions of the jury").

## C

Having determined that several of the prosecutor's comments were improper, we now turn to a consideration of whether defense counsel's failure to object to the remarks was unreasonable under the *Strickland* standard. Our scrutiny of counsel's performance must be highly deferential, and we recognize "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Accordingly, we are inclined to presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance. See *State v. Bradley* (1989), 42 Ohio St.3d 136, 144, 538 N.E.2d 373, 381–382. Nonetheless, the obvious impropriety of many of the prosecutor's remarks in this case makes the defense counsel's failure to object too mysterious even for this standard. If there is any legal strategy that permits a defense attorney to indulge such sophistry and pejorative ranting at his client's expense, it is not known to us. Thus, we find that defense counsel's performance fell below an objective standard of reasonable representation, and now address the issue of prejudice.

## D

As noted above, in order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that there is a reasonable probability that but for counsel's errors, the result of the trial would have been different. In *Strickland, supra,* the United States Supreme Court offered the following guidelines for determining whether a defendant has been sufficiently prejudiced by his attorney's unreasonable performance. The court stated:

"[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.,* 466 U.S. at 695–96, 104 S.Ct. at 2069, 80 L.Ed.2d at 698–699.

The prejudicial effect of the prosecutor's improper admonition to the jury that a failure to convict on felonious assault would signify approval of Carpenter as a mother does not lend itself to precise measurement. Likewise, the influence of

the prosecutor's improper remarks pertaining to the credibility of the defendant and the state's witnesses is difficult to estimate by itself. However, we believe that the prosecution's misrepresentation without objection of Carpenter's testimony as to whether she knowingly hurt Matthew seriously undermines the reliability of the verdict. Moreover, the prejudice arising from this remark was compounded by the prosecutor's comments on the credibility of the defendant and the witnesses.

■ Carpenter was convicted of committing felonious assault in violation of R.C. 2903.11. The criminal statute prohibits, *inter alia*, knowingly causing serious physical harm to another. R.C. 2903.11(A)(1). As with all offenses specifying a degree of culpability, in this case "knowingly," the defendant is not guilty unless the state proves the following:

"(1) His liability is based on conduct which includes either a voluntary act, or an omission to perform an act or duty which he is capable of performing;

"(2) He has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense." R.C. 2901.21(A).

There is no dispute on the record that Teresa Carpenter committed a voluntary act that caused serious physical harm to Matthew Conley. Thus, the critical issue in this case is whether Carpenter acted with the requisite degree of culpability, *i.e.*, whether she acted "knowingly." R.C. 2901.22(B) defines "knowingly" as follows:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

As the state points out in its brief, the jury's determination of whether Carpenter acted knowingly depended almost exclusively on the jurors' assessment of her credibility. It cannot be gainsaid that the resolution of issues of credibility is a function for the jury. *State v. Walker* (1978), 55 Ohio St.2d 208, 212, 9 O.O.3d 152, 154, 378 N.E.2d 1049, 1051. However, just as we cannot disregard a jury's determination as to credibility, a prosecutor cannot deprive the jurors of the opportunity to make an informed decision with respect to credibility. The prosecutor's deceptive characterization of Carpenter's testimony did just that. The prosecutor won his case by essentially inventing a confession as to the only significant issue presented by the facts, while defense counsel stood silent. This usurpation of the jury's role undermines our confidence in the outcome of this trial.

Moreover, Carpenter's credibility would not have been the determinative factor in this case if the prosecution had offered any evidence, other than its insistence that Carpenter was lying, that she acted knowingly. Despite the prosecution's representations to the contrary, no witness, including Carpenter, offered evidence that Carpenter acted knowingly. The testimony of a couple of the state's witnesses contradicted Carpenter on other issues, such as her reason for bringing Matthew to the emergency room, but that testimony, while casting doubt on Carpenter's credibility generally, did not tend to alter the probabilities that she did or did not act knowingly. Even Carpenter's statement to Det. Lawson that the realization that Matthew could die from lack of air "is the reason I took my hand off" is subject to different, equally valid interpretations. While a jury could reasonably infer from the circumstances that Carpenter acted knowingly, we believe that a jury could also reasonably conclude the opposite. In light of the lack of direct evidence going to knowledge, the potential for the prosecutor's improper remarks to influence the verdict was great. Accordingly, we believe that the verdict in this case was one "only weakly supported by the record," so that reversal is in accordance with the *Strickland* guidelines.

Of course, the relevant legal standard for prejudice requires that there be a reasonable probability that, but for trial counsel's unreasonably ineffective performance, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Thus, in order for Carpenter to prevail on her ineffective assistance claim, her attorney's failure to object, not the prosecutor's misconduct, must have caused the prejudice. Because the prosecutor's improper characterization of Carpenter's testimony would easily have been cured by a simple objection from the defense calling for a curative instruction from the bench, we believe that defense counsel's failure to object was sufficiently prejudicial itself to meet the *Strickland* standard.

### III

In light of the foregoing, we reverse and remand for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WOLFF and GRADY, JJ., concur.

GRADY, Judge, concurring.

I am in complete agreement with Judge Young's resolution of the issues presented by the fourth and fifth assignments of error. A practice seems to have

grown among some prosecutors, who believe that they have nothing to lose, of compelling a conviction by so vilifying an accused that a jury would not dare to acquit. Prosecutors should strictly avoid the practice, and defense counsel should be vigilant in discharging their duty to protect their clients from its effects. Both should be mindful of the admonition delivered to federal prosecutors by the United States Supreme Court in *Berger v. United States* (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."