This case is before us on Ronald Trenell Davenport's appeal from a judgment of conviction on three counts of rape. The rape charges arose from the events of the evening of June 7, 1997, when Davenport allegedly sexually assaulted his wife, Jeanette. In support of his appeal, Davenport raises the following assignments of error:
I. Appellant was denied the right to effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section Ten of the Ohio Constitution.
II. The trial court erred in imposing consecutive sentences on the multiple counts of rape in violation of R.C. 2929.14(E)(4) and 2929.19(B)(2)(c).
After considering the assignments of error, we find that Davenport did not receive ineffective assistance of counsel. However, the trial court did err in failing to make the findings required under R.C. 2929.14(E)(4) and R.C.2929.19(B)(2)(c). Accordingly, the second assignment of error is sustained and this case is remanded for the purpose of allowing the trial court to re-sentence Davenport and make the necessary findings.
 I
In contending that trial counsel was ineffective, Davenport points to the following omissions or errors: 1) counsel's failure to object to the admission of expert testimony concerning the veracity and credibility of the complaining witness; 2) counsel's failure to object to the prosecutor's cross-examination of the defendant as to the complaining witness' truthfulness or to the prosecutor's references to the defendant's opinion on this subject during closing argument; and 3) the fact that counsel's cross-examination of the victim was apparently unrelated to a coherent trial strategy.
To succeed in a claim of ineffective assistance of counsel, a defendant must prove that his counsel was deficient and that prejudice resulted. State v. Cook (1992), 65 Ohio St.3d 516,524, citing Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674. As was stressed in Cook:
 [d]eficient performance means that claimed errors were so serious that the defense attorney was not functioning as the "counsel" that the Sixth Amendment guarantees. Prejudice means that counsel's errors compromised the reliability of the trial. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time.
Id. at 524-25. Furthermore, "[a] reasonable probability is a probability sufficient to undermine the confidence in the outcome." State v. Carpenter (1996),116 Ohio App.3d 615, 622. And finally, trial counsel's choice of tactics must be given deference. State v. Nobles (1995),106 Ohio App.3d 246, 276, discretionary appeal not allowed (1996), 74 Ohio St.3d 1510.
As we mentioned, the first claim of error is that trial counsel should have objected to testimony from Jeanette Davenport's treating physician, who commented favorably on Jeanette's credibility. Among the allegations in the case was that Ronald forcibly raped his wife, Jeanette, rectally on June 7, 1997, first by using his penis, and second, by inserting his fist into Jeanette's rectum and forcibly jerking it out, causing Jeanette to suffer trauma and fecal incontinence. Jeanette did not immediately report the crime, but contacted a domestic violence shelter several days later. Subsequently, on June 23, 1997, Jeanette saw Dr. Frazier at the Hopeland Health Clinic for complaints of liquid stools and problems with stool incontinence. Dr. Frazier testified as follows:
 Q. Did she give you a history of why she was having that problem [fecal incontinence]?
 A. Yes. It appeared to be a reliable story, and she said she had recently got married to a man she met in church or something like that. She was having intercourse vaginally, and she stated that her husband was having difficulty and wanted to have sex rectally and repeatedly, and she couldn't take it that way. She ran and went to a shelter.
* * *
 She said she didn't want to do this. She didn't want to have rectal intercourse, and he insisted over and over again and forced, she said he forced himself on her.
The following further exchange also occurred during Dr. Frazier's testimony:
 Q. Once you saw her and saw these physical symptoms, what did you do? What was your conclusion?
 A. Well, I felt sorry for her, first of all, and she seemed like a very intelligent lady, well dressed, good story in terms of what was happening with her, and she said that she went to church. I think that is where she met her husband. She was a Christian lady, she said, and didn't necessarily want to cause problems. She couldn't take any more.
According to Davenport, Dr. Frazier's statements about Jeanette's credibility improperly influenced the jury and were prejudicial because the prosecution relied primarily on Jeanette's credibility to establish the crime. In response, the State argues that failing to object to Dr. Frazier's testimony was a legitimate trial tactic because the defense could have been attempting either to show inconsistencies in the story Jeanette told or to cast doubts on Dr. Frazier's recollection as compared to other established facts in the case. We agree with the State.
In contrast to Dr. Frazier's testimony, Jeanette was a Muslim, not a Christian, and she met her husband through a friend, not at church. Additionally, some inconsistency existed between Jeanette's testimony that her husband had tried to have anal intercourse on only one occasion before the night of the alleged rapes, and Dr. Frazier's recollection that Jeanette said her husband wanted to have sex rectally and repeatedly, but that she couldn't take it that way. Because legitimate reasons existed for admitting Dr. Frazier's testimony, we find no error in trial counsel's decision not to object.
We do recognize that expert witnesses are not allowed to give opinions about the credibility of material witnesses. State v.Davis (1989), 64 Ohio App.3d 334, 345. Assuming for the sake of argument that trial counsel's tactics were not as we have stated, and that counsel should have objected to Dr. Frazier's comment on the reliability of Jeanette's story, we find no prejudice, for two reasons. First, the comment can be viewed as nothing more than a statement, normally made by physicians, that a patient's presenting history is consistent with the physical findings. Had Dr. Frazier's comment been phrased in this manner, it would have been completely appropriate. And, in fact, the physical findings in this case were consistent with Jeanette's story. Specifically, Dr. Frazier stated that in contrast to a normal person's rectum, which would accommodate only the width of one finger comfortably, Jeanette's rectum accommodated three fingers. Additionally, the rectum area had fissures, tears, and bruising.
Second, even if Dr. Frazier's remark is considered as a comment on the veracity of a material witness, the testimony had little "capacity to influence the jury's collective mind," due to the overwhelming evidence of Ronald Davenport's guilt.State v. Jones (1996), 114 Ohio App.3d 306, 318. This was not the typical "he said/she said" situation. Although there were no independent witnesses to the actual rapes, Jeanette's co-employee observed bite marks, marks on Jeanette's arms, shorter hair on Jeanette's head, and incontinence problems when Jeanette first came to work two days after the incident. Additionally, Jeanette walked lightly, as if walking normally would hurt. All these injuries were consistent with Jeanette's claim that her husband bit her, hit her, pulled her up by jerking on the back of her hair during the rapes, and injured her rectum with his fist.
Furthermore, the individual working the hot line for the domestic violence shelter testified that when Jeanette called her three days after the incident, Jeanette whispered and was extremely frightened. The policeman who took the initial rape complaint about a week after the incident saw injuries, including a bruise, a bite mark, and slow and uncomfortable movement on Jeanette's part. Moreover, as we mentioned above, Dr. Frazier's physical findings are consistent with significant trauma. And finally, two inmates who talked with Davenport in jail testified. Each inmate gave essentially the same (but not identical) account. According to the inmates, Davenport said he suspected his wife of "messing around." His attitude was that if she "wanted to be a dog, he would treat her like a dog." First, he tried to have anal sex with her, but then remembered seeing a pornographic movie in which a man stuck a fist up a woman's rectum. He said he wanted to "see if she could take it." When he pulled his fist out, blood and feces were everywhere and he thought he might have ruptured her intestine. However, Davenport said she was a "bitch" and deserved it. Davenport believed at that point that his wife passed out. When she regained consciousness, he turned her over and raped her from the front because he "owned" her. Both inmates also testified that Davenport threatened to kill his wife, his wife's mother, and the co-employee who had persuaded his wife to come forward, because they were all "bitches."
Davenport presented no evidence to support his theory that his wife had been unfaithful. He also presented no evidence other than his own testimony, in which he said that he and his wife had consensual, vaginal sex on the night of June 7, 1997. He denied seeing any injuries, denied seeing any blood or feces, and denied ever having anal sex with his wife other than on two occasions, both of which were a significant period of time before June, 1997. Davenport also denied having made comments to other inmates about his case, and said they must have gotten information after stealing the "discovery packet" that he had while in jail. However, Davenport presented no proof, other than his own testimony, that such a theft had occurred.
The second alleged area of ineffective assistance concerns trial counsel's failure to object to the prosecutor's cross-examination of Ronald Davenport about Jeanette's truthfulness. During Ronald's cross-examination, the following exchange took place:
 Q: So the whole time you were with Jeanette, she never had this bowel problem?
A. No.
Q. Okay. And you would agree she has it now?
 A. I can't agree. I am not with her. I can say no. I say no.
 Q. What you heard from the doctor wouldn't make any difference to you.
A. It don't prove that I did it.
Q. That's not my question.
A. Well.
 Q. I am saying do you agree that she had the problem now from what you heard here, what you heard her say. You know she is an honest person. From what you heard the doctor say, what is your opinion? Does she have the problem now?
A. It was said in here, yes.
Q. Is Jeanette a truthful person?
A. She lies sometimes.
Q. Is she a truthful person?
A. She speaks the truth, too.
According to Davenport, the error in failing to object to this testimony was compounded by the prosecutor's statement during closing argument that "[e]verything * * * [Jeanette] told you is the truth, and even the defendant, in a calm moment, said that Jeanette Davenport tells the truth." The State's response is that the failure to object was a reasonable tactic because the defense was able to introduce evidence that sometimes Jeanette did not tell the truth.
Evid. R. 608(A) states that:
 [t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
Evid. R. 608(B) goes on to say that:
 "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
During his own direct examination, Ronald Davenport denied virtually every aspect of Jeanette's testimony about violence in their relationship. Although Ronald did not do so by opinion or reputation evidence, Evid. R. 608(A) incudes situations where a witness' truthful character has been attacked by opinion or reputation evidence or "otherwise." As a result, Ronald clearly attacked Jeanette's character for truthfulness under Evid. R. 608(A), meaning that the State was entitled to ask Ronald his opinion of Jeanette's character for truthfulness. Likewise, the State was entitled to ask Ronald on cross-examination about specific conduct that pertained to his attack on Jeanette's credibility. Consequently, we see nothing objectionable about the questions asked by the State. Furthermore, we agree with the State that Ronald was not prejudiced by the admission of this evidence. In this context, all Ronald said was that sometimes his wife lied and that sometimes she told the truth.
In our opinion, the only potentially objectionable comment was the prosecutor's statement during closing argument that "[e]verything * * * [Jeanette] told you is the truth, and even the defendant, in a calm moment, said that Jeanette Davenport tells the truth." Technically, characterizing Ronald's testimony in such a way was not inaccurate, as Ronald made this specific statement. However, the statement was taken somewhat out of context, since the remainder of the statement, i.e., that Jeanette lied, was omitted. In Carpenter (1996), 116 Ohio App.3d 615,625, we found a prosecutor's conduct "wholly improper," where the prosecutor grossly misrepresented evidence on an essential element of the crime. We also found that trial counsel's failure to object to the misrepresentation seriously undermined the reliability of the verdict. Id. at 627. Specifically, we said that "[t]he prosecutor won his case by essentially inventing a confession as to the only significant issue presented by the facts, while defense counsel stood silent. This usurpation of the jury's role undermines our confidence in the outcome of this trial." Id.
By way of contrast, the prosecutor in the present case did not misrepresent evidence on an essential element of the crime, but made a technically accurate statement which could have been clearer. Additionally, although trial counsel could have objected, the failure to do so did not undermine the reliability of the verdict. As we noted, the evidence against Davenport was overwhelming.
Furthermore, concerning the first part of the prosecutor's remark (that Jeanette was telling the truth), we have previously held that prosecutors can comment on the credibility of witnesses based on their in-court testimony, but cannot state their "own belief as to whether a witness is telling the truth." Carpenter, at 624. In Carpenter, the prosecutor repeatedly commented in closing that various witnesses told the truth or were "liars." Again, by contrast, the prosecutor in the present case prefaced her statement by referring to evidence that corroborated Jeanette's truthfulness. Specifically, during closing argument, the prosecutor first reviewed the inconsistencies in Ronald Davenport's testimony. Then, she discussed the testimony and physical evidence corroborating Jeanette Davenport's testimony. Finally, at the end of this discussion, the prosecutor said:
 Now, you say, well, this injury connects to the fist in the rectum. Yes, plus it shows she is telling the truth. It corroborates what she is saying happened across the board. Everything she told you was the truth, and even the Defendant, in a calm moment, said that Jeanette Davenport tells the truth.
Under the circumstances, we do not believe the prosecutor improperly vouched for a witness, nor do we think the prosecutor was stating her own belief that Jeanette was truthful. Instead, the prosecutor properly used the evidence as a foundation for the conclusion that Jeanette told the truth. Accordingly, based on the above discussion, we do not find trial counsel ineffective for failing to object to cross-examination of the defendant on Jeanette's truthfulness. We also do not find that trial counsel was ineffective in failing to object to statements made in closing argument on the same subject.
The final argument in support of the ineffective assistance of counsel claim is that trial counsel cross-examined the victim in a manner that was unrelated to any coherent trial strategy. In particular, Davenport points to the fact that his trial counsel cross-examined Jeanette at length about incidents of violence before the rapes, bringing out details that had not even been mentioned during direct exam. Again, we disagree. After reviewing the transcript, we believe trial counsel's strategy is clear. Trial counsel asked Jeanette about a number of incidents of violence that occurred before June 7, 1997. These incidents allegedly took place on Thanksgiving, 1996, around Christmas, 1996, and on Jeanette's birthday in April, 1997. According to Jeanette, her husband became angry on these occasions for no apparent reason and was physically violent. On these occasions, he slapped her quite a few times, choked her, bit her, and once, entered her anally even though she asked him to stop. Jeanette also testified that on one occasion, her face was swollen and on another, her lip was swollen to three times its normal size. She also had bruises. Despite the violence, she did not report the injury to anyone except her minister, whom she told only about one beating. The State did not present evidence from any witness who had seen these injuries, nor did the minister testify. Furthermore, even though Jeanette received what must have been worrisome injuries on June 7, 1997, she did not tell her mother, with whom the couple was living at the time. She also did not report the rapes for several days and did not seek medical attention for some time.
By focusing on the details of the prior assaults, Jeanette's failure to report the assaults, Ronald's suspicion that Jeanette had been unfaithful, and Ronald's denial of any violence, trial counsel was clearly attempting to show that Jeanette was being untruthful and that none of the violence, including the alleged rapes of June 7, 1997, ever occurred, or at least if Jeanette sustained an injury, it was not caused by her husband. The fact that this strategy was unsuccessful was not due to trial counsel's ineffectiveness, but simply reflects the strength of the evidence against Davenport as well as the weakness of Davenport's own proof. Faced with a difficult task, trial counsel did what could he could to defend.
Based on the preceding discussion, the first assignment of error is overruled.
 II
In the second assignment of error, Davenport claims that the trial court erred in imposing consecutive sentences on the multiple counts of rape in violation of R.C. 2929.14(E) and R.C. 2929.19(B)(2)(c). Specifically, the trial court did not make any findings stating its reasons for imposing consecutive sentences. The State concedes that the trial court did not make formal findings, but contends that the trial court's comments when ruling on Davenport's sexual predator status are sufficient to satisfy the requirements of R.C. 2929.14(E).
R.C. 2929.14(E)(4) states in pertinent part as follows:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
* * *
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
R.C. 2929.19(B)(2)(c) enforces R.C. 2929.14 by explicitly requiring the court to make findings giving its reasons for imposing consecutive sentences. We have previously reversed the judgment of a trial court where the appropriate findings for imposing consecutive sentences were not made. See, State v.Hinrichsen (Oct. 10, 1997), Greene App. No. 97 CA 24, unreported.
In the present case, the trial court made no findings concerning the imposition of consecutive sentences. Later in the same hearing, however, the court addressed the issue of whether Davenport should be classified as a sexual predator. After considering a number of factors set out in R.C. 2950.09, the court found that Davenport was a sexual predator. Among the factors the court focused on were some previous problems in the misdemeanor area of domestic violence, Davenport's denial of difficulties, the viciousness of the conduct on the night in question, and some unspecified antisocial, perhaps even psychopathic, personality traits of Davenport. Although these findings could relate to the issues set out in R.C.2929.14(E)(4), a trial court's conclusion that an individual is a sexual predator does not automatically mean that the same individual should be subjected to multiple consecutive sentences under R.C. 2929.14(E). This is particularly true since R.C. 2929.19(B)(2)(c) requires explicit findings to be made when consecutive sentences are imposed under R.C. 2929.14.
The State also argues that the trial court's failure to make findings was not objected to below and is not plain error. We disagree. As we have said on many occasions, "[p]lain error affecting a substantial right, if clearly apparent on the face of the record, may be noticed although it was not brought to the attention of the trial judge." State v. Robertson (1993),90 Ohio App.3d 715, 728, motion for leave to appeal overruled (1994), 65 Ohio St.3d 1471. And, as we just stressed, the trial court's duty to make findings under R.C. 2929.19(B)(2)(c) is mandatory. Consequently, the court's obvious failure to comply with the statute affects a substantial right and is plain error. While we recognize that the plain error doctrine is to be used with utmost caution and under "exceptional circumstances to prevent manifest miscarriage," such circumstances exist when the trial court fails to comply with a clear statutory command. Id.
Based on the above discussion, the second assignment of error is sustained. The judgment of the trial court on sentencing only is reversed and this case is remanded for re-sentencing so that the trial court may make the findings required by R.C.2929.14(E) and R.C. 2929.19(B)(2)(c).
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
John J. Amarante Michael R. Pentecost Hon. John Petzold