OPINION
Darryl Jones is appealing the judgment of the Montgomery County Common Pleas Court, which found him guilty of murder.
On August 10, 2000, at approximately 7:30 p.m. Francisco Weathers drove into the Arlington Apartments area. Mr. Weathers approached the scene in order to buy some crack cocaine. A woman named Tiffany Archie initially approached the vehicle and got into the vehicle. Mr. Weathers had previously purchased drugs from her and her boyfriend, Aaron Martin, who is also referred to as Onion. Mr. Weathers told Ms. Archie that he wanted to buy ten dollars worth of crack cocaine. Ms. Archie got out of his vehicle and told Mr. Martin what Mr. Weathers wanted to buy. Mr. Martin then approached the vehicle and gave Mr. Weathers ten dollars worth of crack cocaine and Mr. Weathers gave Mr. Martin twenty dollars, expecting ten dollars in change. Mr. Martin did not have change for twenty dollars and so he approached Mr. Jones and asked for change for the twenty dollar bill in order to give Mr. Weathers ten dollars. Mr. Jones pocketed the twenty dollars and gave Mr. Martin only ten dollars. When Mr. Weathers began to protest about his ten dollars, Mr. Jones stated, "get away from here, he ain't getting shit back." (Tr. 486). When Mr. Weathers continued to demand his ten dollars change, Mr. Jones walked over to the car pulled out a gun and shot Mr. Weathers in the neck. Mr. Weathers then took off driving but very shortly lost control of the vehicle and crashed into a field. Mr. Jones then walked to where several people had gathered around the car and stated, "Y'all better not say nothing or y'all get the same thing."
The police were called to the scene and an investigation ensued. A witness informed the police that Mr. Jones was seen emptying a gun in a city trash can near the scene. The detectives examined the trash can and found seven shell casings and one live .22 caliber round. Additionally, the police were informed that Mr. Jones ran into 113 Vicksburg after the shooting. The police searched the address pursuant to a search warrant and recovered an assortment of weapons, including a .22 caliber gun hidden in an outdoor grill.
In September, Mr. Jones's son, Mark Gillespie, was arrested for assault and interviewed about the incident on August 10, 2000. Mr. Gillespie informed the police that he had seen Mr. Jones shoot Mr. Weathers in the neck and that afterward Mr. Jones gave Mr. Gillespie the gun "to put up" after the shooting. Mr. Gillespie explained that initially he hid the gun in a tree outside of his home but after the police searched the car of his friend he hid the gun in the engine compartment of his friend's car. The gun was recovered from the vehicle and it was discovered that the ammunition found in the trash can could be used with the gun recovered from Mr. Gillespie.
Mr. Jones was arrested and on October 12, 2000 was indicted on one count of murder with an attached mandatory three year firearm specification. On March 5-8, 2001, a jury trial was held and the jury found Mr. Jones guilty as charged. On March 14, 2001, Mr. Jones was sentenced to a term of fifteen years to life in prison and an additional three year term on the firearm specification to be served consecutively and prior to the murder charge. Mr. Jones has filed this appeal from his conviction.
Mr. Jones raises the following assignments of error:
 1. DEFENDANT-APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 2. DEFENDANT-APPELLANT WAS UNFAIRLY PREJUDICED AND DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN THE PROSECUTION MADE STATEMENTS IN ITS CLOSING ARGUMENT THAT WOULD CONSTITUTE PROSECUTORIAL MISCONDUCT.
 3. DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS DEFENSE COUNSEL FAILED TO OBJECT TO NUMEROUS COMMENTS MADE BY THE PROSECUTOR THAT AMOUNTED TO PROSECUTORIAL MISCONDUCT.
 Appellant's first assignment of error:
Mr. Jones argues that the testimony of the witnesses against him are filled with inconsistencies and the evidence could also support the conclusion that Mr. Martin was the person who shot Mr. Weathers. We disagree.
The standard when reviewing a judgment under a manifest weight standard of review is:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Hufnagel (Sept. 6, 1996), Montgomery App. No. 15563, unreported, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, paragraph three of the syllabus. A manifest weight standard of review questions the believability of the evidence and asks the reviewing court to determine which of the competing inferences is more believable. Hufnagle, supra. However, on the issue of credibility, the reviewing court may not substitute its judgment for that of the trier of fact unless it is patently apparent that the factfinder lost its way. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03, unreported. This Court discussed reviewing credibility under a manifest weight standard of review in State v. Lawson, stating:
 Because the factfinder, be it the jury or * * * the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion. Therefore, although this distinction is not set forth in Thompkins, supra, we conclude that a decision by a factfinder as to which testimony to credit, and to what extent, is a decision that is entitled to greater deference than the decision as to how much logical force to assign an inference suggested by that evidence — in short, how persuasive it is.
(Aug. 22, 1997), Montgomery App. No. 16288, unreported.
At trial, the State presented seven witnesses who were present at the scene of the crime and seven members of the Dayton Police Department and Miami Valley Crime Lab that explained the evidence. Seven witnesses testified that they observed Mr. Jones upset, angry, and saw him waiving a gun and yelling earlier in the day on August 10, 2000. (Tr. 205, 208, 273, 319, 344, 418, 476-477). Additionally, those same seven witnesses testified that they observed Mr. Jones with a gun and that Mr. Jones was the only person at the driver's side door of Mr. Weathers's car when a shot was heard. (Tr. 215-216, 283-86,323,325, 350-51, 423-24, 459, 488-89). Five witnesses testified that they actually observed Mr. Jones raise a gun, point it at Mr. Weathers, and fire one time. (Tr. 215-216, 323, 325, 350-351, 459, 488-489).
Additionally, Mark Gillespie, Mr. Jones' son, testified that Mr. Jones had given him the gun "to put up" or "hide it" after the shooting. (Tr. 287). Although Mr. Gillespie had previously told detectives and prosecutors that he had seen his father shoot Mr. Weathers, at trial he stated that he did not see who shot Mr. Weathers but only heard the shot. (Tr. 284-88, 306). Moreover, the jury was presented with the gun taken from Mr. Gillespie, the discarded ammunition and photographs of the scene.
In his defense, Mr. Jones presented one witness, Gary Howard, who hadn't seen who shot Mr. Weathers but stated that he had seen Mr. Martin rather than Mr. Jones with a gun earlier in the day. (Tr. 623, 642). Also, Mr. Jones testified in his defense. Mr. Jones stated that he saw Mr. Martin shoot Mr. Weathers and then run into 113 Vicksburg. (Tr. 673). In addition, Mr. Jones testified that five of the state's witnesses, Robin Garrett, Mark Gillespie, Joseph Shepard, Latoya Harris, and Nicole Speirs, were not present at the scene and the consistencies in their testimony was merely coincidence. (Tr. 676-78, 688-90). Furthermore, Mr. Jones admitted telling a detective that, "If they say I shot him, I shot him," but that this did not mean he had shot Mr. Weathers. (Tr. 684). Mr. Jones presented a theory to the jury that Mr. Martin had shot Mr. Weathers and had arranged for Mr. Jones to be blamed for it.
Therefore, the jury was presented with two competing theories in the form of the witnesses' testimony. In resolving conflicts in the testimony of the witnesses, it was up to the trier of facts to determine the credibility of the witnesses and the weight to be given to each witness' testimony. The jury clearly found the State's witnesses to be more believable. We cannot say that it is patently apparent that the jury lost its way and therefore, we will not disturb the jury's verdict based on the manifest weight of the evidence. Mr. Jones's first assignment of error is without merit and is overruled.
Appellant's second assignment of error:
Mr. Jones argues that the prosecutor made comments during closing argument which were improper and prejudiced Mr. Jones. We disagree.
When making a closing argument, a prosecutor should not express his personal belief or opinion on the credibility of a witness or regarding the guilt of the defendant or allude to matters which are not supported by admissible evidence. State v. Smith (1984), 14 Ohio St.3d 13, 14;State v. Apanovitch (1987), 33 Ohio St.3d 19. Yet, a prosecutor is permitted to draw reasonable inferences from the evidence presented at trial and comment on those inferences during the closing argument. Statev. Treesh (2001), 90 Ohio St.3d 460, 466 certiorari denied (2001),533 U.S. 904. Both prosecutors and defense attorneys are given wide latitude in summation regarding what the evidence has shown and the reasonable inferences that can be drawn therefrom. State v. Lott
(1990), 51 Ohio St.3d 160, 165, citing State v. Stephens (1970),24 Ohio St.3d 76, 82.
When addressing possible prosecutorial misconduct in closing arguments, this Court has cautioned prosecutors against using the term "smoke screen" too loosely, such that it might be construed as insinuating that the defense counsel is suborning perjury or fabricating evidence. State v. Hooper (June 1, 2001), Montgomery App. No. 18375, unreported. However, where the prosecutor's smoke screen comment is meant merely to redirect the jury's attention to the evidence and point out that the defense is diverting attention rather than suggest the defense counsel suborned perjury, it is proper. Hooper, supra; State v.Williams (March 7, 1996), Cuyahoga App. No. 68609, unreported. Moreover, although a prosecutor may not give his personal opinion about the credibility of witnesses, the prosecutor may comment fairly on the credibility of witnesses based on their in-court testimony, or may even suggest to a jury that the evidence demonstrated that the witness was lying. State v. Carpenter (1996), 116 Ohio App.3d 615, 624; State v.Mundy (1994), 99 Ohio App.3d 275, 304; State v. Gunn (Aug. 7, 1998), Montgomery App. No. 16617, unreported.
Mr. Jones points to the following comments by the prosecutor as prejudicial in his case:
 Sometimes lawyers really get short-changed, and they don't have the facts, and they don't have the law. And do you know what your taught to do? Blow smoke, blow smoke, raise red herrings, because if you can get one juror on a jury off on some wrong path because there's smoke blown in their face, the truth will never be found, and when the truth is not found, justice is never served.
(Tr. 717) (emphasis added).
 And smokescreen? (SIC) You know, you know, there's no fingerprints on the gun, and, therefore, I guess it didn't happen. Do you know what's interesting? Not only aren't the defendant's fingerprints on the gun. They couldn't find any good fingerprints on the gun. Ask yourself this question. Somebody handled the gun sometime. Somebody put it in the engine compartment. People touched the gun. They brought it over to the lab. Now, of course, in this courtroom just about everybody's handled it that's working on the case. There weren't going to be fingerprints on the gun. This is not TV. This is real life.
(Tr. 724) (emphasis added).
 The only person that says the defendant didn't do it is the defendant. What a surprise. Who's got something to lose here? Huh? The defendant, the defendant.
 And I told you when we were picking the jury, `Don't be surprised if somebody walked into this courtroom, came over to the witness stand, raised their right hand to tell the truth, sat in this chair and — sat in that chair and lied to you.'
 Something stunk in this courtroom, and that was the defendant's testimony, because he wasn't being honest with you folks. He was not being honest, and you know that because all of the witnesses that were there saw what happened; and they came here as best they could from work, their walks of life, the different neighborhoods wherever they come from; and they came in here, and they got on that stand, and they told the truth. As hard as it was, they told the truth.
(Tr. 725) (emphasis added).
We will first address the prosecutor's comments referring to the defense arguments as blowing smoke and being a smoke screen. The prosecutor's smoke screen comment would only be permissible if the prosecutor's purpose was to refocus the jury on the central issue of the case and to the evidence. In the instant case, the defense had pointed to the lack of Mr. Jones's fingerprints on the weapon as significant and indicative that he had not shot Mr. Weathers. The prosecutor was trying to refocus the jury on the central issue of whether Mr. Jones had shot Mr. Weathers. Moreover, the prosecutor was trying to redirect the jury's attention to the evidence of the witnesses who saw Mr. Jones shoot Mr. Weathers and the evidence connecting him to the gun. We cannot find that the prosecutor's reference to a "smoke screen" was prejudicial to Mr. Jones's case.
We will next address the prosecutor's comments that Mr. Jones was not being honest in his testimony to the jury. Mr. Jones argues that in these comments the prosecutor called the defendant a liar and insinuated that the defense counsel had suborned perjury. However, a prosecutor is permitted to comment fairly on the credibility of a witness or to suggest that the evidence demonstrated that a witness lied. The prosecutor's comment that Mr. Jones was not being honest was a fair comment on his credibility. The prosecutor went through the witnesses who testified that they saw Mr. Jones shoot Mr. Weathers. Additionally, the prosecutor went through the evidence of the gun Mr. Jones's son had testified Mr. Jones gave him to hide and the ammunition found in the trash. Then the prosecutor pointed to the fact that Mr. Jones's testimony was inconsistent with the evidence and the testimony of the other witnesses. Therefore, the prosecutor's statement that Mr. Jones was "not being honest" was a fair and permissible characterization of the testimony presented at trial and the reasonable inferences which could be drawn therefrom. Thus, we find that the prosecutor's comments during closing argument that Mr. Jones was "not being honest" were proper. Mr. Jones's second assignment of error is without merit and is overruled.
Appellant's third assignment of error:
Mr. Jones argues that he was rendered ineffective assistance of counsel by his counsel's failure to object to the statements of the prosecutor which Mr. Jones alleged were improper in the previous assignment of error. We disagree.
In order to obtain a reversal of a conviction based on ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that this deficient performance prejudiced the defendant to such a degree as to deny the defendant a fair trial.State v. Green (2000), 90 Ohio St.3d 352, 375 citing Strickland v.Washington (1984), 466 U.S. 668, 687. The defendant bears the burden of proof on both prongs because a properly licensed attorney is presumed competent in Ohio. State v. Jackson (1980), 64 Ohio St.2d 107, 111, 18 O.O.3d 348. Thus, the defendant must make a showing of reasonable probability that but for counsel's deficient performance, the results of the proceeding would have been different. State v. Bradley (1989),42 Ohio St.3d 136, paragraph 3 of the syllabus, certiorari denied (1990), 497 U.S. 1011.
Mr. Jones argues that his trial counsel was ineffective for failing to object to the prosecutor's remarks during closing, which Mr. Jones argued in the previous assignment of error were improper. However, as we found in the previous assignment of error that the prosecutor's remarks were proper, there was no reason for Mr. Jones's trial counsel to object. Therefore, as Mr. Jones' trial counsel was not deficient in refraining from objecting to the prosecutor's proper closing remarks, Mr. Jones was not rendered ineffective assistance of counsel. Mr. Jones's third assignment of error is without merit and is overruled.
The judgment of the trial court is affirmed.
WOLFF, P.J. and BROGAN, J., concur.