[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This matter is before the court pursuant to our previous grant of Douglas R. Sleppy's application to reopen his appeal concerning his conviction for voluntary manslaughter with an accompanying firearm specification. For the reasons that follow, we will again affirm the judgment of the trial court.
On January 29, 1996, Sleppy was indicted on one count of murder in violation of R.C. 2903.02 with an associated firearm specification. This charge stemmed from an incident in which Sleppy shot and killed Ramon Gonzales.
At trial, Sleppy did not deny that he shot Gonzales. Instead, Sleppy contended that his actions were undertaken in self-defense. The trial court submitted instructions to the jury on murder and self-defense. In addition, at the State's request, the court also instructed the jury on voluntary manslaughter. Sleppy contends that in its voluntary manslaughter instruction, the court impermissibly placed upon him the burden of proving that he acted while under the influence of sudden passion or in a sudden fit of rage. Sleppy objected at trial to the giving of any instruction on voluntary manslaughter, as well as to the substantive content of the instruction given.
The jury found Sleppy not guilty of murder, but guilty of voluntary manslaughter. The jury also found that Sleppy did have a firearm on his person or under his control while committing the offense of voluntary manslaughter. The trial court sentenced Sleppy to an indefinite term of ten to twenty-five years incarceration on the voluntary manslaughter conviction and three years actual incarceration on the firearm specification, with those terms to be served consecutively.
Sleppy then timely appealed to this court, asserting two assignments of error.
First, Sleppy alleged that the trial court erred and denied him his constitutional right to due process of law when it instructed the jury that he bore the burden of proving the mitigating factors of "sudden passion" or "sudden fit of rage" in connection with the voluntary manslaughter charge. Second, Sleppy alleged that he was deprived of a fair trial as a result of prosecutorial misconduct during the rebuttal phase of the state's closing argument.
We affirmed the trial court's judgment. See State v. Sleppy
(May 23, 1997), Darke App. No. 96-CA-1412, unreported. We overruled Sleppy's first assignment of error because we found the case of State v. Rhodes (1992), 63 Ohio St.3d 613, to be "indistinguishable from, and thus dispositive of, the case before us." State v. Sleppy, supra, at 6. We found that Rhodes "held that a defendant on trial for murder or aggravated murder bears the burden of proving, by a preponderance of the evidence, that he acted under the influence of sudden passion or in a sudden fit of rage in order to be convicted of voluntary manslaughter rather than murder or aggravated murder." Id., at 5. We also overruled Sleppy's second assignment of error, concluding that even if the prosecutor's comments were improper, they did not warrant reversal of Sleppy's conviction.
On February 17, 1998, pursuant to App. R. 26 (B), Sleppy filed an application to this court to reopen his appeal. In addition, on March 6, 1998, Sleppy filed with the Ohio Supreme Court a motion for leave to file a delayed appeal of our original decision. Sleppy's motion for leave to file a delayed appeal was granted by the Ohio Supreme Court on April 22, 1998. See State v.Sleppy (1998), 81 Ohio St.3d 1514.
On May 6, 1998, we granted Sleppy's motion to reopen his appeal. See State v. Sleppy (May 6, 1998), Darke App. No. 96-CA-1412, Decision and Entry, unreported. We first determined that Sleppy had shown good cause for the untimely filing of his application for reopening. Concerning Sleppy's allegation that he had received ineffective assistance from his original appellate counsel, we stated:
 In his application for reopening, Sleppy contends that his appellate attorney failed to discuss the most compelling flaw in the voluntary manslaughter instruction: the fact that Sleppy had not requested the instruction and thus had not sought to use sudden passion or a sudden fit of rage in mitigation. Sleppy contends that his case is distinguishable from Rhodes
[State v. Rhodes, supra] because the facts of his case, i.e., his vehement objection to the voluntary manslaughter instruction, obviate Rhodes' analogy between affirmative defenses and mitigating circumstances advanced as a defense to a higher charge. Sleppy also points out that his appellate counsel did not direct our attention to Hill
[State v. Hill (1996), 108 Ohio App.3d 279],
supra, a case in which the Eighth District Court of Appeals reversed a defendant's conviction for voluntary manslaughter because the trial court had improperly instructed the jury that the defendant had asserted a voluntary manslaughter defense and had the burden of proving that defense. Hill held that because the prosecution, and not the defendant, had sought the instruction on voluntary manslaughter, the trial court should have instructed the jury that neither party had the burden of proof on the sudden passion or sudden fit of rage element.
After careful consideration of Sleppy's argument and the decision in Hill, supra, we conclude that a genuine issue exists as to whether Sleppy was deprived of the effective assistance of counsel on appeal. Thus, Sleppy's application for reopening is GRANTED, and new appellate counsel shall be appointed for additional briefing. The briefing shall be limited to the narrow issue addressed in this decision and entry. Id., at 6-7.
Subsequent to our decision granting Sleppy's application to reopen his appeal, Sleppy filed a motion with the Ohio Supreme Court to hold his delayed appeal in that court in abeyance. On May 21, 1998, the Ohio Supreme Court denied that motion. SeeState v. Sleppy (1998), 82 Ohio St.3d 1417. On July 22, 1998, the Ohio Supreme Court dismissed Sleppy's appeal as not involving any substantial constitutional question and disallowed it as a discretionary appeal. See State v. Sleppy (1998),82 Ohio St.3d 1480.
In connection with his reopened appeal, Sleppy now presents two assignments of error for our review.
 FIRST ASSIGNMENT OF ERROR APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DUE TO APPELLATE COUNSEL'S FAILURE TO ARGUE THAT THE TRIAL COURT'S JURY INSTRUCTION HAD UNFAIRLY UNDERMINED APPELLANT'S CLAIM OF SELF-DEFENSE AND DENIED HIM A FAIR TRIAL.
"On a criminal appeal as of right, [a defendant] is entitled to effective assistance of appellate counsel, who must exercise reasonable professional judgment in presenting the appeal." Statev. Watson (1991), 61 Ohio St.3d 1, 16; see also Evitts v. Lucey
(1985), 469 U.S. 387. In determining whether a defendant has received the effective assistance of appellate counsel, the same standards set forth in Strickland v. Washington (1984),466 U.S. 668, for determining a claim of ineffectiveness of trial counsel apply. State v. Watson, supra, at 16.
In Strickland, supra, the United States Supreme Court held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id., at 686. Accordingly,
 [a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.
 Id., at 687.
The Ohio Supreme Court has enunciated a similar test for determining claims for ineffective assistance of counsel:
 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus.
In Strickland, supra, the Supreme Court instructed:
 Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See Michel v. Louisiana, supra,
at 101. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N. Y. U. L. Rev. 299, 343 (1983).
 The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.
 Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
Strickland, supra, at 689-690.
Appellate counsel "need not advance every argument, regardless of merit, urged by the appellant. . . . But the attorney must be available to assist in preparing and submitting a brief to the appellate court, . . . and must play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim." Evitts v.Lucey, supra, at 394 (citations omitted) (emphasis in the original). As the Cuyahoga County Court of Appeals has stated:
 Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The Court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes (1983), 463 U.S. 745, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy.
 State v. Ridgeway (May 20, 1998), Cuyahoga App. No. 56875, unreported, at 3-4.
Finally, it is appellant's burden to establish the ineffectiveness of his counsel because in Ohio, a properly licensed attorney is presumed to be competent. State v. Jackson
(1980), 64 Ohio St.2d 107, 110-111.
In the initial appeal of this matter, defendant's counsel argued that the trial court committed prejudicial error when it instructed the jury that the defendant bore the burden of proof concerning the "sudden passion" or "sudden fit of rage" aspects of voluntary manslaughter. In making that argument, defendant's counsel urged us not to apply State v. Rhodes (1992), 63 Ohio St.3d 613, in which the Ohio Supreme Court held that "[a] defendant on trial for murder . . . bears the burden of persuading the fact finder, by a preponderance of the evidence, that he or she acted under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, R.C. 2903.03 (A), in order for the defendant to be convicted of voluntary manslaughter rather than murder. . . ." Id., at the syllabus. Defendant's counsel argued that Rhodes was contrary to United States Supreme Court precedent and in violation of the due process clause of the United States Constitution.
Defendant now contends that his former appellate counsel provided ineffective assistance in presenting the initial appeal. Defendant contends that rather than mounting a direct assault onRhodes, his counsel should have attempted to distinguish Rhodes
by emphasizing that Sleppy had objected to the voluntary manslaughter instruction, unlike the defendant in Rhodes.
Defendant contends that his counsel should have argued that the voluntary manslaughter instruction improperly undermined his claim of self-defense and should have cited us to the case of State v.Hill (1996), 108 Ohio App.3d 279. In Hill, the Eighth District Court of Appeals distinguished Rhodes as follows.
 In the instant case, the defense objected to the giving of the charge; it was the prosecution that requested the charge and capitalized on it by arguing it as a compromise to the jury. In final argument, the prosecution stated:
 "MR. DEVER: So if you say that you can't be convinced, then I think that the way is to compromise and the proper perspective is voluntary manslaughter; in a sudden fit of passion, brought on by serious provocation occasioned by the victim which caused hereto [sic] use this deadly force. I think that's what you have here, ladies and gentleman."
The Supreme Court in Rhodes was not confronted with this situation where defense counsel does not want the jury to be instructed on voluntary manslaughter. We find that the court was correct in charging on voluntary manslaughter, but should not have instructed the jury that "[t]he defendant [is] asserting this voluntary manslaughter defense * * * and the burden of proving this defense [is] upon the defendant." It was the prosecution that sought the charge and had the burden of proving voluntary manslaughter. Under the peculiar circumstances of this case, the court should have instructed the jury that neither party had the burden of proof on the issue. See State v. Wood (May 9, 1991), Cuyahoga App. No. 58437, unreported, at 15, 1991 WL 76041, where this court approved the following instruction:
 "In determining whether the defendant was under the influence of sudden passion or in a sudden fit of rage either of which was brought on by obvious provocation occasioned by
 . . . the victim, you should consider any credible evidence whether offered by the State or defendant.
 "That is, sudden passion or sudden fit of rage is not an element of the offense, but is a factual consideration mitigating the culpable mental state of the defendant and neither the State nor the defense has the burden of proof on this issue."
As we view the case, the court's instruction that defendant was asserting the voluntary manslaughter defense may have confused the jury into thinking that the defendant would be content with a conviction for that offense. This could well have detracted from the defendant's self-defense argument and tainted the verdict. We cannot say that the improper instruction was harmless or non-prejudicial. Id., at 284-285.
Although we afforded the defendant the opportunity to reopen his appeal, it is apparent upon full review of the matter that the challenge now made by the defendant to his conviction is not substantially different than the one presented to us by his former appellate counsel in defendant's original appeal. Defendant's former counsel, as well as his present counsel, have raised to us the issue of the propriety of the trial court's voluntary manslaughter instruction, and in particular, have predicated a claim of error on the trial court's placement of the burden of proof of "sudden passion" or "sudden fit of rage" on the defendant. Moreover, although defendant's former counsel did not emphasize the purported significance of his objections to the voluntary manslaughter instruction as his present counsel now does, he nevertheless did note in his brief that he had objected both to the giving of the instruction and to its substance. See
Brief of the Appellant, Jan. 6, 1997, at p. 9. Further, defendant's former counsel also argued in a footnote that the "plain error" level of analysis employed by the Rhodes court would not apply here because unlike the defendant in Rhodes, he had objected to the trial court's voluntary manslaughter instruction.Id., at p. 10, n. 5. In our initial opinion in this matter, we expressly recognized that Sleppy had objected both to the giving of the voluntary manslaughter instruction and to its substance.State v. Sleppy (May 23, 1997), Darke App. No. 96-CA-1412, unreported, at 2. The issue of whether the court erred in the burden of proof portions of its voluntary manslaughter instruction was completely and directly before us and with full awareness of Sleppy's objections, we thoroughly examined that issue. We concluded that the Rhodes decision was controlling and was "indistinguishable" from the case before us. Indeed, implicit in any court's determination that a particular authority applies is a consideration of whether that authority is substantially on point with the facts of the case under review, regardless of whether counsel has made all possible efforts to distinguish that authority.
We find that Sleppy's former appellate counsel was not ineffective in his representation of Sleppy on appeal. He brought to our attention an alleged error in the court's voluntary manslaughter instruction and argued that error to us in a vigorous and professionally competent manner. In addressing an alleged error, appellate counsel is not required to advance every conceivable argument to us in order to provide the type of effective representation that the Sixth Amendment requires. Appellate counsel's failure to cite a case to us that new counsel now contends should apply does not constitute ineffective assistance of counsel. We believe that the conclusion reached by the First District Court of Appeals concerning a claim of ineffective assistance of counsel at the trial court level applies with equal force to appellate-level claims of ineffective assistance of counsel:
 Jones argues that his first attorney failed to investigate and to cite relevant precedent in connection with a motion to suppress statements that Jones made at the time of his arrest. But the trial court is presumed to know the relevant law, and Jones's attorney presented the suppression issue and the facts to the trial court. Further, any error in law is reviewable at the appellate level. If failure to cite relevant precedent were tantamount to ineffective assistance of counsel, few convictions could stand.
 State v. Jones (Aug. 28, 1998), Hamilton App. No. C-970043, unreported (emphasis added).
In addition, former appellate counsel's approach of directly attacking Rhodes rather than attempting to distinguish it withHill may well have been the result of a conscious strategy choice. Although Sleppy's present counsel now contends that Hill
provides a stronger argument for reversal of Sleppy's manslaughter conviction, that contention is certainly subject to reasonable debate. Sleppy's former counsel may well have decided that he stood a better chance of ultimate success by attacking Rhodes and creating the potential for the Ohio Supreme Court to overruleRhodes on subsequent appeal. Although some counsel may choose to argue that a particular case is "bad law" and should not be followed, while at the same time arguing alternatively that the case is distinguishable from the facts before the court, counsel is not required to present both arguments. The choice is largely one of strategy and a decision to focus on one line of argument to the exclusion of another does not lead to the conclusion that counsel's performance has fallen outside the range of reasonable professional assistance.
In addition, in Hill, the court concluded that the burden of proving "sudden passion" or "sudden fit of rage" should not be placed on either the defendant or the State. To that extent, Hill
undercut defendant's argument that the case should be retried with that burden placed on the State. Defendant's former appellate counsel may have concluded that under the facts of the case, Sleppy's chances of being found guilty of voluntary manslaughter upon retrial remained essentially the same, regardless of whether he had the burden of proof concerning "sudden passion" or "sudden fit of rage", as required by Rhodes, or whether those aspects of voluntary manslaughter were essentially assumed, as contemplated by Hill. That is, defendant's former appellate counsel may have concluded that the best chance to obtain a total verdict of not guilty lay with jury instructions that required the State to prove not only the elements of murder beyond a reasonable doubt, but also, if the State failed in that regard, to require it to prove "sudden passion" or "sudden fit of rage" beyond a reasonable doubt in order for the State to obtain a conviction on the inferior offense of voluntary manslaughter. Accordingly, defendant's former appellate counsel may have concluded that reliance on Hill
provided, at best, inadequate relief.
As noted above, judicial scrutiny of counsel's performance must be highly deferential. Strickland, supra, at 689. Counsel's performance cannot be judged ineffective simply because the argument presented by counsel, when viewed from hindsight, did not prevail. As we have stated, "we are inclined to presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance." See State v. Carpenter (1996), 116 Ohio App.3d 615,626.
Finally, Sleppy suffered no prejudice from his former appellate counsel's failure to directly argue State v. Hill in the earlier proceedings before this court. Hill itself presents a factual scenario that is distinguishable from the one before us. In Hill, not only did the trial court place the burden of proof on the defendant concerning "sudden passion" or "sudden fit of rage," it instructed the jury that it was the defendant who was asserting voluntary manslaughter as a defense to the murder charge, despite the fact that the defendant had objected to the charge. In addition, the prosecutor in Hill argued in favor of a voluntary manslaughter conviction as a "compromise" verdict. Here, although the trial court did refer to "sudden passion" or "sudden fit of rage" as an affirmative defense, it did not advise the jury that it was the defendant who requested the voluntary manslaughter instruction. Moreover, in closing argument, the prosecutor only briefly mentioned the elements of voluntary manslaughter and argued strenuously in favor of a conviction of murder. The defendant's attorney, in turn, focused heavily on the claim of self-defense. On the record of this case, unlike the concern expressed by the Hill court, we do not believe that the court's jury instruction regarding voluntary manslaughter confused the jury into thinking that the defendant would be content with a conviction for that offense. See State v. Hill, supra, at 285.
Moreover, carried to its logical conclusion, the argument now presented by Sleppy would seem to require that no jury instruction on voluntary manslaughter be given at all when the defendant wishes to rely strictly on a theory of self-defense to a charge of murder. However, Hill itself recognizes that "if the evidence is present, the trial court must charge on both murder and voluntary manslaughter where the circumstances require, even if the defendant objects to the charge." Id., at 283 (emphasis in the original). Sleppy now concedes that "[i]t is not Appellant's position that the Court was prohibited from giving a Voluntary Manslaughter charge." See Reply Brief of Appellant, Douglas R. Sleppy (Dec. 10, 1998), at 1. Thus, it appears that what may have "undermined" Sleppy's claim of self-defense is the fact that the evidence presented at trial, as a matter of law, required the jury to consider whether Sleppy shot Gonzales while under the influence of "sudden passion" or in a "sudden fit of rage," not so much that the court allegedly improperly placed the burden on Sleppy to prove that passion or fit of rage. Indeed, given that the facts of the case were concededly sufficient to require an instruction on voluntary manslaughter, and given that "[v]oluntary manslaughter is . . . an inferior degree of murder," see State v.Rhodes, supra, at 617, the risk to which Sleppy would be exposed by failing to meet an improperly placed burden of proof concerning "sudden passion" or "sudden fit of rage" would be a potential conviction for murder, not voluntary manslaughter. Sleppy was convicted of voluntary manslaughter, not murder, and thus, suffered no prejudice from the allegedly erroneous burden of proof aspect of the voluntary manslaughter instruction. Accordingly, because Sleppy suffered no prejudice from the trial court's failure to give a voluntary manslaughter instruction similar to the one contemplated by Hill, he was likewise not prejudiced by his former appellate counsel's failure to directly refer us toHill in the initial consideration of this appeal. In the absence of such prejudice, Sleppy's claim of ineffective assistance of appellate counsel necessarily fails.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR APPELLANT WAS DENIED THE CONSTITUTIONAL RIGHT OF EFFECTIVE ASSISTANCE OF COUNSEL BY APPELLANT COUNSEL'S FAILURE TO ARGUE THAT THE FIRST ASSIGNMENT OF ERROR ARGUED HEREIN, AS WELL AS IMPROPER REMARKS MADE BY THE PROSECUTOR DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND UNDER FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
In this assignment of error, Sleppy essentially attempts to resurrect an alleged error assigned by his former appellate counsel in the initial appeal of this matter, that is, that Sleppy was deprived of a fair trial as a result of certain comments made by the prosecutor during the rebuttal phase of the prosecutor's closing argument. In our decision of May 23, 1997, we overruled that assignment of error. Sleppy now appears to contend that his former appellate counsel was ineffective in failing to argue the cumulative effect of the prejudice that resulted from the prosecutor's remarks along with the prejudice that resulted from the court's allegedly improper jury instruction on voluntary manslaughter.
In our decision that permitted Sleppy to reopen his appeal, we specifically limited the scope of the reopened proceedings to the issue of whether Sleppy's former appellate counsel was ineffective for failing to argue the applicability of State v.Hill, supra. The issue Sleppy now attempts to raise exceeds the scope of the reopened appeal. In any event, Sleppy's argument here is contingent upon a determination that his former appellate counsel provided ineffective assistance in challenging on appeal the trial court's voluntary manslaughter instruction. We rejected that contention in our disposition of Sleppy's first assignment of error. Accordingly, Sleppy's second assignment of error is overruled as well.
 CONCLUSION
Having overruled the two assignments of error presented, the judgment of the trial court will again be affirmed.
GRADY, P.J. and BROGAN, J., concur.
Copies mailed to:
Richard M. Howell
Michael L. Brumbaugh
Hon. Richard S. Dodge
(by assignment)