DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Lucas County Court of Common Pleas, which entered a judgment on a jury verdict finding appellant Maurice Zimmerman guilty of complicity to commit murder. For the reasons that follow, we affirm the decision of the trial court.
On December 22, 1997, appellant was indicted for murder in violation of R.C. 2903.02 by the Lucas County Grand Jury. This charge stemmed from the beating death on December 13, 1997, of Kenneth McBride. A trial was ultimately held on June 15 and 16, 1998.
Paula Brown, the resident of the home where the murder took place, testified at trial as an eyewitness. According to Brown, McBride had been visiting her home on the evening of December 12, 1997, and sometime later in the evening, close to midnight, McBride went to take a nap in the children's bedroom. Brown testified that a couple of hours later appellant and a companion, Arthur Lawrence, knocked on the door and asked where McBride was. Brown directed the two men to the children's bedroom. According to Brown, the men walked into the bedroom and began to beat McBride, "kicking," "hitting," and "stomping" him. She testified that she was scared and watched the beating from the doorway of a bedroom across the hall, where her children were sleeping. (She stated that, while much of the house was lighted, the lights were off in the room where the beating was taking place.) Brown stated that the beating continued for ten to fifteen minutes. At one point she saw her children's nineteen inch television set "go across the room twice," testifying that appellant and Lawrence were throwing the television set on McBride. She also testified that the two men threw a lamp at McBride, as she saw the lamp broken in the room. Finally, Brown testified that she saw Lawrence hit McBride with a kitchen chair. McBride died of his injuries.[1]
Dr. Cynthia Beisser, a Deputy Lucas County Coroner, testified as to the results of the autopsy that she performed on McBride. She described many broken ribs, fractures in the cheek and jaw bones, a shattered femur, several lacerations, contusions, abrasions, internal bleeding, and swelling and bleeding in the brain. She also described how, when a brain swells, having no other place to go, the brain stem begins to push down into the opening to the spinal cord; the distortion of the brain stem in the process stops basic life functions, such as respiration and heartbeat. Dr. Beisser expressed her opinion that McBride died of multiple blunt force trauma.
On cross-examination, appellant's trial counsel asked Dr. Beisser if certain of McBride's injuries were fatal in themselves, such as the shattered femur and the broken ribs. Dr. Beisser testified that they were not fatal in and of themselves. She also testified upon questioning that the shattered femur could have been caused by the television set and possibly by the chair. This line of questioning corresponded with appellant's apparent theory of the case: that he did not beat McBride as severely as Lawrence did and that appellant's blows did not cause the fatal injuries. On re-direct examination, the prosecutor showed Dr. Beisser photographs from McBride's autopsy and asked her to explain to the jury what the photographs depicted. Appellant's counsel did not object to this line of questioning, and counsel likewise did not object when the photographs were offered into evidence.
Appellant testified on his own behalf. According to appellant, he struck McBride in the face, chest, and head with both an open hand and a closed fist, and he kicked McBride in the buttocks or the back of the thigh. However, appellant testified that he did not intend to kill McBride. Appellant admitted that Lawrence threw a television set and used a chair to beat McBride, but appellant denied that he did.
Following testimony, the trial judge, upon appellant's request, instructed the jury on both murder and the lesser included offense of involuntary manslaughter in the commission of a felonious assault, and the court also gave a complicity instruction. The jury found appellant guilty of complicity to commit murder, and he was sentenced to a term of fifteen years to life imprisonment. Appellant now appeals, setting forth the following assignments of error:
"First Assignment of Error
 "THE PROSECUTOR SHOULD NOT HAVE BEEN PERMITTED TO INTRODUCE EVIDENCE INCLUDING GRUESOME TESTIMONY AND PHOTOGRAPHS ON REDIRECT EXAMINATION OF THE CORONER WHEN THE EVIDENCE WAS OUTSIDE THE SCOPE OF CROSS-EXAMINATION. (TR 367-370).
"Second Assignment of Error
 "DEFENSE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR NOT OBJECTING TO THE PROSECUTOR'S INTRODUCTION OF EVIDENCE INCLUDING GRUESOME TESTIMONY AND PHOTOGRAPHS ON REDIRECT EXAMINATION OF THE CORONER WHEN THE EVIDENCE WAS OUTSIDE THE SCOPE OF CROSS EXAMINATION.
"Third Assignment of Error
 "DEFENSE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE AT CLOSING ARGUMENT WHEN HE FAILED TO ARGUE REASONABLE DOUBT AND FAILED TO ARGUE FOR A LESSER INCLUDED OFFENSE AFTER REQUESTING AN INSTRUCTION ON THAT OFFENSE.
"Fourth Assignment of Error
 "EVEN IF THE ERRORS IN THIS CASE WERE NOT INDIVIDUALLY PREJUDICIAL, THE CUMULATIVE EFFECT OF THOSE ERRORS WAS PREJUDICIAL."
In his first assignment of error, appellant contends that the trial court should not have allowed Dr. Beisser to testify about the photographs on redirect examination because it was beyond the scope of cross-examination. As appellant points out in this appeal, trial counsel did not object to this line of questioning. According to the Supreme Court of Ohio, if a party fails to raise an alleged error at trial, that error is waived unless it amounts to plain error. State v. Waddell (1996),75 Ohio St.3d 163, 166; State v. Joseph (1995), 73 Ohio St.3d 450,455, reconsideration denied (1995), 74 Ohio St.3d 1423, certiorari denied (1996), 516 U.S. 1178. In order to warrant reversal based on plain error, the error must be such that, but for the error, the outcome of the trial would have clearly been different. Id.;Waddell, 75 Ohio St.3d at 166.
Typically, the scope of redirect examination is limited to matters inquired into by the adverse party on cross-examination. Holtz v. Dick (1884), 42 Ohio St. 23, paragraph seven of the syllabus; Micham v. Micham (Sept. 30, 1998), Lucas App. No. L-97-1308, unreported. However, the ultimate limits of inquiry on redirect examination are left to the sound discretion of the trial court. Id.; Holtz, 42 Ohio St. 23, at paragraph seven of the syllabus. A trial court abuses its discretion when it acts in a manner that is "grossly violative of fact and logic so as to demonstrate perversity of will, defiance of judgment, undue passion, or extreme bias." Micham, supra, quoting Deans v.Allegheny Internatl. (USA) Inc. (1990), 69 Ohio App.3d 349, 352.
In this case, on direct examination, the coroner gave a detailed narrative of the injuries. On cross-examination, she was questioned as to whether certain injuries might have been fatal. On redirect, she explained the photographs of the injuries. Given this sequence of events, we cannot say that the trial court abused its discretion in allowing Dr. Beisser to testify as she did on redirect examination. We therefore conclude that the trial court did not err, let alone commit plain error. Accordingly, appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant contends that his trial counsel was ineffective for failing to object to the prosecutor's line of questioning on redirect examination of Dr. Beisser. The Supreme Court of Ohio has held that courts should apply a two-part test to determine ineffective assistance claims. According to the Supreme Court:
 "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, at paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011, citing State v. Lytle (1976), 48 Ohio St.2d 391; Strickland v. Washington (1984), 466 U.S. 668.
The court must defer to the strong presumption that counsel's performance falls within the wide range of reasonable professional performance. Bradley, 42 Ohio St.3d at 142. Even if counsel's performance falls outside the objective standard of reasonable representation, the court shall not reverse unless counsel's ineffectiveness resulted in prejudice. Id. In order to show prejudice warranting reversal, the defendant must show that there is a reasonable probability that, but for counsel's ineffectiveness, the outcome of the proceeding would have been different. Id., quoting Strickland, 466 U.S. at 694.
In this case, in the first instance, we find that counsel's performance was not deficient because, as we have already stated, Dr. Beisser's testimony on redirect examination was admissible. Counsel is not ineffective in failing to object to admissible evidence. See State v. Redd (Mar. 29, 1996), Lucas App. No. L-94-330, unreported, discretionary appeal not allowed (1996), 77 Ohio St.3d 1412; State v. Williams (Oct. 7, 1999), Cuyahoga App. No. 74840, unreported, discretionary appeal not allowed (2000), 88 Ohio St.3d 1412.[2] In addition, appellant has not demonstrated a "reasonable probability" that, but for the alleged instance of ineffectiveness, the outcome of the trial would have been different. See Bradley, 42 Ohio St.3d at 142. Such a showing would be difficult in this case where the redirect testimony about the photographs came on the heels of Dr. Beisser's graphic oral testimony about the injuries on direct examination. For these reasons, the second assignment of error is found not well-taken.
In his third assignment of error, appellant contends that trial counsel was ineffective at closing argument in failing to argue reasonable doubt and in failing to argue for the lesser included offense of involuntary manslaughter in the commission of a felonious assault. Appellant contends that trial counsel only argued that the state's witnesses were unreliable, that appellant did not intend to kill McBride, and that appellant was not guilty of murder. Applying the Strickland and Bradley principles, seeStrickland, 466 U.S. at 694; Bradley, 42 Ohio St.3d at 142, we find that appellant has not shown that counsel's trial performance was deficient as counsel's decisions about closing argument were legitimate trial strategy. See, e.g., State v. Smith (2000),89 Ohio St.3d 323, 328 (courts normally defer to counsel's judgment on trial strategy, even if that judgment is viewed by the court as being questionable). Moreover, as we stated in State v. Hull
(Dec. 3, 1999), Lucas App. No. L-98-1307, unreported:
 " * * * in reviewing claims of ineffective assistance of counsel, appellate courts are admonished to be highly deferential, indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and refrain from second guessing strategic decisions of trial counsel. This last point is particularly significant as trial tactics are generally not subject to question by a reviewing court. The decisions made regarding closing argument by trial counsel in the case sub judice were legitimate trial tactics. This court will not resort to micro-management of closing arguments by trial lawyers." (Citations omitted.)
Additionally, appellant has not demonstrated prejudice — a reasonable probability that, but for counsel's allegedly deficient performance at closing argument, the outcome of the trial would have been different. The instructions given by the trial court amply informed the jury of the burden of proof (proof beyond a reasonable doubt), and the jury was, in fact, instructed on and allowed to consider the lesser included offense of involuntary manslaughter in the commission of a felonious assault. For these reasons, appellant's third assignment of error is found not well-taken.
In his fourth assignment of error, appellant contends that the cumulative effect of the errors he has complained of requires reversal, even if the errors are not sufficient to require reversal individually. Appellant cites State v. DeMarco
(1987), 31 Ohio St.3d 191, paragraph two of the syllabus, to support his contention. The court in DeMarco stated in paragraph two of the syllabus:
 "Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed when the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial."
In this case, appellant does not complain of violations of the Rules of Evidence. Nevertheless, taking DeMarco to stand for the simple proposition that cumulative errors can form the basis for reversal even when the errors singularly would not warrant reversal, we do not find that DeMarco would require reversal in this case. We find no error in the proceedings below, even a single harmless error. Accordingly, appellant's fourth assignment of error is found not well-taken.
On consideration whereof, appellant was not prejudiced or prevented from having a fair trial. Accordingly, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
 ____________________ PIETRYKOWSKI, J.
 James R. Sherck, J., Richard W. Knepper, P.J., JUDGES CONCUR.
[1] Another eyewitness, Artis Mae Hopkins, testified that she came in after the beating had begun and witnessed both men kicking McBride about the buttocks and legs. She also saw a chair being used to beat McBride, but she was not sure who was wielding it.
[2] Appellant cites State v. Carpenter (1996), 116 Ohio App.3d 615,626 for the proposition that trial counsel's failure to object to "objectionable" matter can constitute ineffective assistance of counsel. We find Carpenter to be distinguishable. In Carpenter, though the appellate court found that failure to object to a prosecutor's remarks during closing argument rendered counsel's performance deficient, the appellate court also found that the prosecutor's remarks were improper in the first instance. In this case, we find that Dr. Beisser's testimony on redirect examination was properly admitted.