OPINION
Appellant, Donna Honaker, appeals the November 6, 2000 judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of appellant's four minor children, Jess (born February 11, 1990), Benjamin (born September 9, 1992), Robert (born February 28, 19094), and Mary (born February 17, 1996), to Franklin County Children Services ("FCCS"). For the reasons that follow, we affirm.
In November 1998, FCCS opened a voluntary protective supervision case regarding the four youngest children (Jess, Benjamin, Robert, and Mary) of appellant and her husband, David Honaker. The case was opened after law enforcement authorities discovered the skeletal remains of the Honaker's four-year-old daughter, Sarah, buried in the basement of the family's home. Subsequent investigation indicated that Sarah had died on March 6, 1996. Appellant has always maintained that Sarah died due to complications of a cold and/or flu.
In December 1998, appellant and her husband were both indicted on charges of child endangering (R.C. 2919.22) and involuntary manslaughter (R.C. 2903.04, a felony of the first degree) in the death of Sarah. The children were originally placed with an older half-sister and her husband, but in February 1999, the children were placed in foster care.
On February 3, 2000, appellant and her husband entered guilty pleas to the stipulated lesser included offense of involuntary manslaughter, a felony of the third degree. Appellant was sentenced to a three to ten year term of imprisonment. Appellant's husband was sentenced to a five to ten year term of imprisonment.
On February 10, 2000, FCCS moved for permanent custody of the four children, and an evidentiary hearing was held before a magistrate judge on May 8, 9, and 10, 2000. By written decision filed June 12, 2000, the magistrate denied FCCS's motion for permanent custody finding that FCCS had failed to prove that it was in the best interest of the children to grant permanent custody. In so doing, the magistrate indicated that the children enjoy a significant bond with each other and their parents, that since FCCS intervention, the children had begun to develop emotional and school problems, and that there was no indication of abuse or maltreatment of Sarah or the other children by their parents. Finally, the magistrate noted that the sentencing court had indicated a willingness to grant appellant super shock probation in August 2000, after appellant has served six months of her sentence. Thus, the magistrate concluded that appellant would be able to finish the case plan and effect reunification with the children within three months.
FCCS timely filed written objections to the magistrate's decision, arguing that the magistrate's conclusions were against the manifest weight of the evidence and that collateral estoppel precluded the magistrate from finding appellant and her husband blameless in the death of Sarah. The trial court held hearings on August 7, September 20, and October 2, 2000, and admitted additional evidence pursuant to Civ.R. 53(E).
In particular, the trial court sought and obtained additional information from the lay guardian ad litem concerning the status of the children subsequent to the dispositional hearings in May 2000. At the August 7, 2000 hearing, the lay guardian ad litem had indicated that he had not had any contact with the children since December 1999. The trial court admonished the lay guardian and ordered that he make contact with the children for purposes of updating the court at the September hearing. The lay guardian did so and testified at the September hearing that the children were doing wonderfully in their foster homes and had adjusted extremely well educationally, developmentally, medically, physically, and emotionally.
The trial court also admitted a copy of the presentence investigation report ("PSI") prepared at the request of, and prior to sentencing by, the court presiding over appellant's criminal case. Additionally, the trial court also reviewed letters from two of appellant's other adult children and drawings from the four children at issue in this case. Finally, at the October hearing, appellant's counsel informed the trial court that appellant's motion for super shock probation had been withdrawn due to indications from the sentencing court that it would be denied.
By judgment entry filed November 6, 2000, the trial court sustained both of FCCS's objections to the magistrate's decision and reversed the magistrate's decision to deny the motion for permanent custody. In so doing, the trial court found by clear and convincing evidence that the children could not be placed with either parent within a reasonable time and should not be placed with either parent, and that granting permanent custody was in the best interest of the children. See, generally, R.C.2151.414(B). The trial court also found that collateral estoppel precluded the magistrate from holding the parents faultless in the death of Sarah because the issue of causation was conclusively determined by the guilty pleas of appellant and her husband to involuntary manslaughter.
Appellant timely appealed, raising the following three assignments of error:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR, ABUSED ITS DISCRETION, AND VIOLATED THE PARENT'S DUE PROCESS RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS WHEN IT ADMITTED THE PRE-SENTENCE INVESTIGATION REPORT FILED UNDER SEAL IN THE PARENT'S CRIMINAL CASE AND RELIED UPON THE INFORMATION CONTAINED IN THAT REPORT WHEN IT OVERRULED THE MAGISTRATE'S REPORT AND GRANTED THE AGENCY'S MOTION FOR A PERMANENT COURT COMMITMENT.
 SECOND ASSIGNMENT OF ERROR TRIAL COUNSEL'S FAILURE TO OBJECT TO THE ILLEGAL USE OF THE PARENT'S PRE-SENTENCE INVESTIGATION REPORT IN THE PERMANENT CUSTODY COMMITMENT PROCEEDINGS CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL AND DEPRIVED THE PARENT OF HER RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE ONE OF THE OHIO CONSTITUTION.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED WHEN, INSTEAD OF DETERMINING THE BEST INTERESTS OF THE CHILDREN, IT PUNISHED THE PARENT FOR HER UNLAWFUL CONDUCT BY AWARDING PERMANENT CUSTODY OF HER CHILDREN TO THE AGENCY.
In her first assignment of error, appellant contends that the trial court erred when it admitted and relied upon the PSI prepared for the general division of the common pleas court in appellant's criminal case. According to appellant, the trial court's use of the PSI is prohibited by R.C. 2951.03(D), which states that the contents of such reports are confidential and generally to be used only for sentencing purposes. See State ex rel. Sharpless v. Gierke (2000), 137 Ohio App.3d 821, 824-825. On appeal, the guardian ad litem also suggests an alternative basis upon which the trial court should not have admitted the PSI report — i.e., that it otherwise contained inadmissible hearsay.
Appellant, however, failed to object to the admissibility of the PSI below and, as such, she has waived all but plain error. See State v. Cook (1998), 83 Ohio St.3d 404, 426. In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself. Goldfuss v. Davidson (1997),79 Ohio St.3d 116, syllabus. Thus, assuming arguendo that the PSI would be inadmissible had a proper objection been raised (an issue we do not specifically decide herein), we cannot find that the trial court's admission of the PSI in this case satisfies the plain error standard. As such, any alleged error by the trial court in this regard does not warrant reversal of the trial court's decision.
In so finding, we disagree with appellant's contention that the PSI formed the primary basis for the trial court's decision to grant the motion for permanent custody. In support of her contention, appellant principally relies upon a statement by the trial court at the October 2000 hearing, that the transcript of the proceedings before the magistrate did not contain clear and convincing evidence to support the motion for permanent custody. We find, however, that appellant's reliance on this statement is misplaced and that appellant generally overstates the effect of the PSI on the trial court.
First, the comment by the trial court highlighted by appellant does not refer to the PSI at all or any specific information contained therein. At best, the statement merely suggests the trial court's opinion that, had the magistrate heard all the evidence presented to the trial court, the magistrate would have made a different decision. In fact, immediately before the statement relied upon by appellant, the trial court specifically mentions two evidentiary concerns before the magistrate, neither of which directly implicate the PSI. First, the magistrate placed too much emphasis on the possibility that appellant might receive early judicial release, and second, the children's position could have been stated more strongly. Thus, taken in context, the statement relied upon by appellant does not indicate that the PSI was a significant factor in the trial court's decision to grant permanent custody.
Moreover, while statements from the trial court suggest that it was distraught over Sarah's mistreatment and suffering prior to her death (and that presumably the source of such information was from the trial court's review of the PSI), the written judgment entry of the trial court announcing its decision to grant permanent custody is devoid of any such comments and/or any specific reference to any information contained in the PSI. Rather, the trial court addressed the statutory factors concerning the best interest determination, see R.C. 2151.414(D)(1) through (5), and discussed the applicability of those factors with reference only to evidence submitted at the magistrate's hearing or to the trial court on objections but not contained in the PSI.
Given the lack of evidence suggesting that the trial court's decision was significantly affected by the PSI, we cannot find that admission of the PSI constituted plain error. Appellant's first assignment of error is not well-taken and is overruled.
In her second assignment of error, appellant contends that she is entitled to a new hearing because she was deprived of her right to effective assistance of trial counsel according to the standards set forth in Strickland v. Washington (1984), 466 U.S. 668. See Jones v. Lucas Cty. Children Services Bd. (1988), 46 Ohio App.3d 85, 86 (noting that test for ineffective assistance of trial counsel announced in Strickland is equally applicable in actions by state to permanently terminate parental rights). According to appellant, her trial counsel was ineffective in failing to properly object to the admission of the PSI. We disagree.
In order to prevail on his claim of ineffective assistance of counsel under Strickland, appellant must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." State v. Reynolds (1998), 80 Ohio St.3d 670,674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, supra, at 686. Thus, a two-part test is necessary to examine such claims. First, appellant must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. State v. Keith (1997), 79 Ohio St.3d 514,534. Second, appellant must show that, but for the counsel's errors, there is a reasonable probability that the results of the trial would be different. Id. "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." State v. Carpenter (1996),116 Ohio App.3d 615, 622.
The burden of showing ineffective assistance of counsel is on the defendant. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel. State v. Carter (1995), 72 Ohio St.3d 545, 558
("[j]udicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel"); Carpenter, supra, at 626 (court of appeals is to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). Applying these standards, we find that appellant has failed to show that her counsel was ineffective.
First, appellant's trial counsel may have had strategic reasons for not objecting to the admission of the PSI. While the PSI does not indicate that appellant was completely blameless in the death of Sarah, it does suggest that appellant's husband was primarily responsible for creating the environment leading to that tragic result. The PSI indicates that appellant's husband was physically and emotionally abusive to appellant and the children and that appellant's husband convinced appellant not to contact the authorities upon Sarah's death, telling her that children services would take the other children out of the home. The PSI also showed that appellant had no significant prior criminal record, had a history of employment, and had participated in psychological counseling.
It was not unreasonable that trial counsel might want to provide the trial court with the details contained in the PSI concerning the circumstances surrounding the underlying crime, especially given the inability to obtain early release from the sentencing court. While such a strategy could, in hindsight, be questioned, it was not outside the wide range of reasonable professional assistance.
Second, appellant has failed to show that, but for trial counsel's alleged error in not objecting to the PSI, there is a reasonable probability that the results of the trial would be different. As noted above, nothing in the trial court's written decision suggests that the PSI played a role in its decision to grant permanent custody. In fact, the transcript of the August 7, 2000 hearing suggests that the trial court was inclined to reverse the magistrate's decision before the trial court even obtained a copy of the PSI.
We find, therefore, that appellant has failed to show that her trial counsel was ineffective under the Strickland test. As such, appellant's second assignment of error is not well-taken and is overruled.
In her third assignment of error, appellant contends that the trial court erred in applying the best interest test to determine whether to grant permanent custody. In particular, appellant contends that the trial court erred by treating appellant's conviction for involuntary manslaughter as automatically requiring the granting of the motion for permanent custody. According to appellant, the trial court essentially granted the permanent custody motion as a form of punishment for her wrongdoing. Again, we disagree.
Under R.C. 2151.414(B), a court may grant permanent custody of a child who is neither abandoned nor orphaned to a public children services agency only if the court finds by clear and convincing evidence that: (1) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; and (2) it is in the best interest of the child to grant permanent custody of the child to the agency. Permanent custody judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. In re Brofford (1992),83 Ohio App.3d 869, 876-877.
Pursuant to R.C. 2151.414(D), when determining a child's best interests, the court must consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
"The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Awkal (1994), 95 Ohio App.3d 309, 316.
Here, in its written judgment entry, the trial court specifically addressed each of the statutory factors and discussed the evidence relevant thereto. In particular, the court noted that: (1) while the children appear to be bonded with their parents, there have been no signs of trauma to the children as a result of not seeing their parents due to their incarceration; (2) the children appear bonded to their foster parents, both sets of which are willing to adopt the children and maintain their relationship with their natural siblings; (3) the children have expressed to the guardian ad litem that they wanted to remain with their prospective adoptive parents; (4) the children have not been in the custody of their birth parents since November 1998, and have been in foster care since February 1999, more than twelve months out of a consecutive twenty-two month period; (5) there are no suitable relatives willing to care for the children; (6) the FCCS caseworker testified that a grant of permanent custody would be in the children's best interest, in part because of the special needs and medical problems of the children; (7) the guardian ad litem advocated before the magistrate and the trial court that it was in the children's best interest that permanent custody be granted; and (8) the parents were incarcerated and the appellant's hope for an August 2000 early release proved unfounded.
Appellant does not dispute any of these findings; nor does appellant argue that such findings are insufficient to support the trial court's decision that permanent custody would be in the children's best interest. Rather, appellant's assertion of error rests solely on statements by the trial court at the October 2000 hearing, which statements, appellant contends, shows that the trial court improperly found that appellant's conviction automatically warranted termination of appellant's parental rights. Specifically, the trial court stated as follows:
 *** And if anybody should be protecting their children, it should be their mother. I mean she came from you and she looked to you for her protection. And her little short time on this life, it's horrible for me to imagine how she suffered and what she went through. And I think when you allowed that to happen to a child and if you believe some participate in it [sic], then you've lost your right as far as the State is concerned, as far as this Court is concerned to continue parenting at lease [sic] the children that are here. [October 2, 2000, Tr. at 16.]
It is axiomatic, however, that a court speaks from its journal and not by oral pronouncement from the bench. Bittmann v. Bittmann (1934),129 Ohio St. 123, 127; Schenley v. Kauth (1953), 160 Ohio St. 109, paragraph one of the syllabus. Thus, "parties can appeal only errors in the judgment of the court, that is, the journal entry; they cannot appeal errors in the judge's comments that are not a part of the judgment entry." Economy Fire Cas. Co. v. Craft General Contr., Inc. (1982),7 Ohio App.3d 335, 337 (holding that although it appeared from the trial court's comment in the transcript that the judge may have relied on the wrong statute, there is no appealable error since the judgment of the trial court did not contain any error).
Likewise, in this case, the written judgment entry of the trial court contains none of the alleged statements relied upon by appellant in support of her assertions of error. In fact, the trial court did not discuss appellant's conviction at all in the written decision except to state its existence and that appellant would remain incarcerated for the foreseeable future. Nothing in the trial court's judgment entry indicates that the trial court found that appellant's conviction for involuntary manslaughter automatically warranted termination of her parental rights. Thus, to the extent the trial court's statement during the hearing suggests an improper basis to grant permanent custody, it does not amount to reversible error. Appellant's third assignment of error is not well-taken and is overruled.
For the foregoing reasons, all three of appellant's assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
 __________________ LAZARUS, J.
BOWMAN and BROWN, JJ., concur.