DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Ottawa County Court of Common Pleas that found appellant guilty of one count of rape in violation of R.C. 2907.02(A)(1)(c). For the reasons that follow, this court affirms the judgment of the trial court.
Appellant sets forth the following assignments of error:
 "1) The ruling of the Trial Court denying the Defendant's motion for acquittal was erroneous and the verdict of the Jury was against the manifest weight of the evidence.
 "2) The statements of the Prosecuting Attorney during opening and closing arguments constituted prosecutorial misconduct and prejudiced the Defendant from having a fair trial.
 "3) The Defendant was denied effective assistance of counsel to his prejudice."
The undisputed facts that are relevant to the issues raised on appeal are as follows. On August 3, 2000, appellant was indicted on one count of rape as a result of the allegations of Casey Notestine, who suffers from cerebral palsy. Notestine contended that on July 21, 2000, appellant entered her apartment, took advantage of her impaired ability to resist, and forced her to have sexual intercourse with him.
The matter came to trial on October 31, 2000, and the state presented the following evidence. Casey Notestine testified that she and appellant met two or three weeks prior to the night of July 21, 2000. On that occasion, she was visiting with friends at the boarding house where appellant and Casey's friend Stephanie lived. She stated that appellant saw her use her crutches to walk to the car later that night. Casey further testified that she next saw appellant the night before the incident when she returned to her friend Stephanie's apartment.
At that time, she and Stephanie were sitting in Stephanie's car talking when appellant approached and began talking to them. Appellant rode along when Stephanie took Casey home later that night and he handed Casey her crutches when she was ready to get out of the car. Appellant followed Casey into the apartment and then asked her if he could come back sometime and talk. Casey testified that she told appellant that he could come back "as long as it was only to talk."
Casey testified that she next saw appellant on the evening of July 21, 2000. She stated that she was sitting on her sofa talking on the phone with her friend, Chastity, when appellant knocked and came in through the unlocked screen door. Appellant then sat down next to her. Casey testified further that as she continued talking to her friend, appellant put his hand on her thigh. Appellant then put his leg over hers, which prevented her from moving. She stated that her crutches were on the floor beside the sofa, out of her reach. Appellant then took her hand and put it between his legs but she tried to pull away. She testified that appellant unzipped his pants and then began to remove her shorts. At that time, Casey said, "No, we can't do this because I'm on my period," and appellant responded, "I don't give a damn." Appellant then removed Casey's shorts, grabbed her legs and forced himself inside her. She testified that because of her physical condition she was unable to move away from appellant. Casey testified that she remained on a three-way phone call with Chastity and her friend, Christine, while appellant forced her to have intercourse with him. She stated that she was afraid that if she told either of her friends what was happening, appellant might get angry and harm her further, so she did not say anything. She explained that she was afraid of appellant because he overpowered her physically, she could tell he had been drinking, and she did not know whether he had a weapon. As appellant was leaving, he told Casey not to tell anyone what happened. Two or three minutes after he left, he came back to Casey's door, saw her on the telephone, and asked her if she was telling anyone. As appellant was leaving for the second time, he told Casey that he would be back. Casey then got up, locked her front door, and called her friend, Chastity, to tell her what had happened. Christine, who lived five minutes away, came to Casey's house and Chastity came over shortly thereafter. Casey testified that later that evening, her uncle called the police.
Casey's friend, Christine Gaeth, testified that she was talking to Casey on the telephone on the night of July 20, 2000, when she noticed that Casey was not as talkative as she normally is and was speaking very quietly. She stated that she asked Casey if something was wrong and said Casey mumbled "uh-hum." She testified that she asked Casey if she wanted her to hang up and Casey said no. At that time, Casey began switching back and forth between Christine and Chastity, who also had called her. At one point, Casey hung up but Christine called her back. She further testified that eventually Casey began to talk a little louder and asked Christine to come to her apartment. Christine stated that when she arrived at Casey's apartment, Casey was crying and appeared to be in shock. Casey then told her that Leroy Scharf had raped her.
Casey's friend, Chastity Doughty, testified that when she was talking on the telephone to Casey on the night of July 20, 2000, she heard Casey talking to someone else in the background. Casey then stopped talking to her. Chastity asked Casey what was wrong and Casey did not respond, so Chastity then asked Casey a series of questions to determine who was in the apartment with her. Eventually, Chastity asked Casey if Leroy was there with her and Casey answered yes. Chastity then asked Casey if she and Leroy were having intercourse and Casey said yes. Chastity then said she would hang up but Casey told her not to do that. Chastity stayed on the phone with Casey until appellant left, and then went to Casey's apartment.
Stephanie Salamons, Casey's friend, testified that she went to Casey's apartment at 11:00 or 11:30 on the night of July 21, 2000. She stated that Casey was crying and afraid to be left alone.
Randy Reidmaier, a detective with the Ottawa County Sheriff's Office, testified that he took a preliminary statement from Casey during the early morning hours of July 22, 2000. He stated that Casey was visibly upset when he first spoke to her. The detective testified that Casey's statement that night was essentially the same as the testimony she had just given. Detective Reidmaier later interviewed appellant, who admitted going into Casey's apartment, finding her on the telephone and sitting beside her on the sofa. Appellant told the detective that he put his hand on Casey's leg, kissed her and had intercourse with her on the sofa. The detective then testified that during the interview, appellant told him that he had six beers before going to Casey's apartment and told Reidmaier "It smashed me." Appellant also told the detective that he knew he "was going to fuck something that night."
The state rested and the defense did not present any witnesses. The jury returned a verdict of guilty as to the charge of rape and appellant was sentenced to a term of imprisonment.
In his first assignment of error, appellant asserts that the trial court erred by denying his motion for acquittal and that the jury's verdict was against the manifest weight of the evidence. Appellant does not argue these two issues separately but simply asserts that the state failed to prove all of the elements of rape beyond a reasonable doubt. We will consider each issue separately.
As to appellant's motion for acquittal made pursuant to Crim.R. 29(A), it is well-established that "a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved." State v. Apanovitch (1987), 33 Ohio St.3d 19, 23; Statev. Bridgeman (1978), 55 Ohio St.2d 261. The reviewing court shall consider the evidence in a light most favorable to the appellee. Jacksonv. Virginia (1979), 443 U.S. 307.
R.C. 2907.02(A)(1)(c), the offense with which appellant was charged, provides as follows:
 "(A)(1)No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender, but is living separate and apart from the offender, when any of the following applies:
"* * *
 "(c)The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."
In the case before us, appellant did not dispute that he engaged in sexual conduct with Casey Notestine, who was not his spouse. The state asserted that Casey Notestine's ability to resist appellant's advances was substantially impaired because she suffers from cerebral palsy and that appellant knew or had reasonable cause to know that her ability to resist was so impaired.
Upon consideration of all the evidence that was before the trial court and as summarized above, this court finds that, at the close of the state's case, reasonable minds could reach different conclusions as to whether the state had proved beyond a reasonable doubt that Casey Notestine's ability to resist was substantially impaired and that appellant knew of her impairment. We therefore find that the trial court did not err by denying appellant's motion for acquittal.
We also find appellant's argument that the jury's verdict was against the weight of the evidence to be without merit.
Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v.Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 388, citing Tibbs v. Florida (1982), 457 U.S. 21, 42.
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
We have thoroughly reviewed the evidence in this case as summarized above. Casey Notestine testified that she told appellant "No, we can't do this because I'm on my period." This testimony was undisputed. The jury heard Casey testify that, as a result of cerebral palsy, she does not have the use of her legs and that on at least two recent occasions appellant had witnessed her total dependence on crutches to move about. The jury further heard Casey testify that after she told appellant "no" he grabbed her legs, positioned her so that she was unable to move at all and had difficulty breathing, climbed on top of her and penetrated her vaginally. This testimony also was undisputed. The defense focused on the irrelevant fact that Casey failed to take advantage of the opportunity to ask one of her friends on the phone to call for help. Upon consideration of the foregoing, we find no indication that the trier of fact lost its way or created a manifest miscarriage of justice by finding appellant guilty of rape.
Based on the foregoing, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that he was prejudiced and prevented from having a fair trial by several statements made by the prosecuting attorney during opening and closing arguments. Appellant argues that the prosecutor improperly referred to him as a "predator" and the victim as "prey," misquoted the evidence and attributed to appellant statements he had not made, verified the truthfulness of Casey Notestine's testimony, and misstated the law.
Initially, we note that opening statements and closing arguments are not evidence and that the jury in this case was so instructed. In this assignment of error, appellant asserts that he was prejudiced by several remarks made by the prosecutor during opening statement and closing argument. The record in this case indicates, however, that defense counsel did not object to the allegedly improper remarks. Those alleged errors therefore were not properly preserved for appeal and are, accordingly, waived. See State v. Wogenstahl (1996), 75 Ohio St.3d 344. Our review of the comments, therefore, is discretionary and limited to plain error only. Crim.R. 52(B). While Crim.R. 52(B) provides that "* * * plain errors or defects affecting substantial rights may be noticed although they are not brought to the attention of the trial court[,]" notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only in order to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91; Statev. Landrum (1990), 53 Ohio St.3d 107, 111; State v. Franklin (1991),62 Ohio St.3d 118, 128.
In order to prevail on a claim governed by the plain error standard, appellant must demonstrate that the outcome of his trial would clearly have been different but for the errors he alleges. See State v. Waddell
(1996), 75 Ohio St.3d 163, 166. Thus, the alleged prosecutorial misconduct constitutes plain error only if it is clear that appellant would not have been convicted in the absence of the improper comments. See State v. Slagle (1992), 65 Ohio St.3d 597, 605. In cases such as this, the plain error standard generally presents "an almost insurmountable obstacle to reversal." State v. Carpenter (1996),116 Ohio App.3d 615, 621.
Appellant cites several comments made by the prosecutor during opening and closing arguments as having been improper and asserts that he was prejudiced thereby. The Supreme Court of Ohio has noted that the prosecution "* * * is entitled to a certain degree of latitude in summation, * * *." State v. Lott (1990), 51 Ohio St.3d 160, 165, citingState v. Liberatore (1982), 69 Ohio St.2d 583, 589. Further, "in the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." Lott, supra, at 165, citing State v. Stephens (1970), 24 Ohio St.2d 76, 82.
We will first address appellant's claim arising from a remark made by the prosecutor during his opening statement. Appellant asserts that he was prejudiced when the prosecutor misstated the law by saying that Casey Notestine's "ability to resist is therefore impaired, which is one of the elements of this case." Appellant correctly states that R.C. 2907.02(A)(1) (c) requires that the person's ability to resist or consent be "substantially impaired," not merely "impaired."
Again, we emphasize that opening statements of counsel are not evidence. State v. Frazier 91995), 73 Ohio St.3d 323, 338. Further, we find that any misstatement made by the prosecutor was cured by the trial court's very clear instructions to the jury as to this element, as well as by statements made by both the prosecutor and trial counsel during their closing arguments in which they properly used the term "substantially impaired." We therefore find that appellant was not prejudiced by the prosecutor's statement and this argument is without merit.
As to closing argument, appellant asserts that several of the prosecutor's comments constituted misconduct. Appellant first cites the prosecutor's use of the words "predator" to describe appellant and "prey" in reference to Casey Notestine. Appellant asserts that the prosecutor's choice of words inflamed the jury.
The transcript shows that during his closing argument, the prosecutor made the following statements: "* * * he was a predator that night;" "It is a predator and prey;" "What chance does she have against a predator? Easy prey, just easy prey;" and, "* * * what he did was act as he had prey." The words "predator" and "prey" often are used to describe the perpetrator of a crime and his victim. While certainly vivid, the words are not inflammatory or improper in the contexts quoted above.
Appellant also claims that the prosecutor misquoted the evidence and attributed to appellant statements he had not made. The first comment made by the prosecutor appears to be an attempt to relate what appellant might have been thinking that night: "`I am going to do it to somebody, and I know where I can get it because she can't fight back.' She is vulnerable. She can't fight back, `So I don't really care. I don't give a damn.'" Appellant also cites the following statement of the prosecutor: "He goes out and gets drunk. `I am going to get some pussy. I am going to fuck something. It doesn't matter what. I know where I can get it.'"
The prosecutor's choice of words was graphic. We note, however, that while appellant did not testify, evidence as to statements appellant made came before the jury in the form of Detective Reidmaier's testimony as to his interview with appellant. The prosecutor's words appear to be in reference to the statements appellant made to Detective Reidmaier, as testified to by the detective as follows: "* * * He then said, `I knew I was going to get some pussy. The next thing I know, we were fucking.' And he goes on with comments like that throughout the interview * * *." Although the prosecutor may have made it sound like appellant testified, he essentially was paraphrasing prior testimony of Casey Notestine and Detective Reidmaier. The jury would recall that appellant did not testify and would recognize the statements as a reference to the testimony of those two witnesses. "The jury should be given credit for sufficient common sense and sound judgment to discount * * *" unsubstantiated remarks. State v. Woodards (1966), 6 Ohio St.2d 14, 26.
Appellant also asserts that the prosecutor made statements intended to verify the truthfulness of Casey Notestine's testimony. In support of this claim, appellant points to a specific page in the transcript but does not identify a particular statement. We surmise that appellant is questioning the following remarks made by the prosecutor at the end of his closing argument: "* * * She has nothing to gain. Did she enjoy testifying on the stand? Has she enjoyed the past few months baring her soul? What has she gained from this? Nothing other than she is telling the truth. * * *"
It is not improper for the prosecution to comment fairly on the credibility of witnesses based on their in-court testimony. State v.Carpenter (1996), 116 Ohio App.3d 615, 624, citations omitted. While a prosecutor may argue that certain evidence tends to make a witness more or less credible, he may not state his own belief as to whether a witness is telling the truth. Id., citations omitted. The prosecutor in this case, however, went beyond merely arguing reasonable inferences from the facts and asserted as fact that a witness was truthful. This constituted vouching for the witness and was improper.
We have carefully considered the entire record of proceedings in the trial court and, based thereon, we find that the prosecutor's comment vouching for witness Casey Notestine's veracity did not have "a pervasive effect on the inferences to be drawn from the evidence" thereby seriously undermining the reliability of the verdict in this case. See Stricklandv. Washington (1984), 466 U.S. 668 at 695-696. Accordingly, we are unable to find, pursuant to Waddell, supra, that there is a reasonable probability that but for the prosecutor's comment, the result of the trial would have been different.
For the foregoing reasons, we find that the comments made by the prosecutor do not rise to the level of plain error affecting the outcome of the trial. Accordingly, appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant presents five arguments in support of his claim that trial counsel was ineffective.
To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court.Strickland v. Washington (1984), 466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. State v. Hamblin (1988), 37 Ohio St.3d 153.
In Ohio, a properly licensed attorney is presumed competent, and the burden is on the appellant to show counsel's ineffectiveness. State v.Lytle (1976), 48 Ohio St.2d 391; State v. Hamblin (1988),37 Ohio St.3d 153.
Appellant first asserts that trial counsel was ineffective for failing to object to the comments raised in his second assignment of error. For the reasons set forth in our analysis of Assignment of Error No. 2,supra, we find that trial counsel's failure to object to the prosecutor's remarks did not render his representation ineffective and this argument is without merit.
Appellant also asserts that trial counsel was deficient because he did not file a request for discovery, a request for a bill of particulars, or a request for notice. Appellant merely lists these claimed infractions and does not offer any argument in support or explain how he was prejudiced by such omissions. This argument is without merit.
Appellant next asserts that during voir dire, trial counsel failed to properly question, or move to strike, a juror whose granddaughter suffers from cerebral palsy and a juror who dealt with rape issues when he worked as a guidance counselor. First, a careful examination of the transcript reveals that there was no juror with a grandchild who suffers from cerebral palsy. It appears that appellate counsel misread a portion of the transcript wherein the prosecutor spoke to the potential jurors about applying the facts of the case to the law as given to them by the judge and asked, "Does anyone here think, `I have a granddaughter with down syndrome and I might compare the two?'" One juror then asked, "Cerebral palsy and down syndrome?" and stated that she "might have a problem there." After further instruction from the trial court as to the importance of putting aside personal experiences and concentrating on the issues in the trial, the potential juror stated that she thought she could do that. Based on the foregoing, there was no reason trial counsel should have objected to that particular juror being seated.
As to the juror who worked as a counselor, appellant claims that his background would cause him to have "specialized knowledge and sympathy for alleged victims," which would prevent a fair trial. When questioned by the judge and the prosecutor, this potential juror stated that he believed his prior experience would not interfere with the fair deliberation of this case or prejudice him against either side. The trial court in this case stated at one point during voir dire that "* * * we don't expect you to check your humanity at the door when you come into the courtroom. So everyone brings a different perspective to the case, and that is why juries work." We are unable to find that trial counsel was ineffective for failing to further question or challenge this juror.
Appellant next claims that trial counsel was ineffective for failing to object to numerous leading, cumulative and irrelevant questions, all of which allowed substantial amounts of inadmissible information to come before the jury. In support of this argument, appellant cites to sixty-four pages of trial transcript without identifying any specific questions or examples of such "inadmissible information." This argument is without merit.
Based on the foregoing, this court finds that appellant has not shown that trial counsel's representation fell below an objective standard of reasonableness, or that there is a reasonable probability that, but for those claimed errors, the result of the trial would have been different when considering the totality of the evidence that was before the trial court. Accordingly appellant's third assignment of error is not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Ottawa County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., JUDGES CONCUR.